**William P. TAVOULAREAS, et al., Appellants**

v.

**George D. COMNAS.**

**No. 82–1654.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 16, 1983.

Decided Oct. 28, 1983.

Joseph A. Artabane, Washington, D.C., with whom Joseph A. Ingrisano, Washington, D.C., was on the brief, for appellants.

Joel M. Wolosky, New York City, with whom John B. Williams, Washington, D.C., was on the brief, for appellee. Laurence Storch, New York City, also entered an appearance for appellee.

Before WRIGHT and SCALIA, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

This is an action for libel and slander. Plaintiffs William Tavoulareas and his son Peter Tavoulareas allege that the defendant, a former business associate of Peter Tavoulareas, defamed them in testimony given in Washington, D.C., to investigators for the Securities and Exchange Commission, and in telephone conversations between the defendant in Massachusetts and New York and various individuals (staff members of the House Subcommittee on Interstate and Foreign Commerce, and reporters for the *Washington Post*) in Washington, D.C. The district court found that it did not have personal jurisdiction over the defendant and granted defendant's motion for dismissal under Federal Rule of Civil Procedure 12(b)(2). We affirm.

Subject matter jurisdiction in this case is founded on diversity of citizenship.[1] 28 U.S.C. § 1332(a)(1) & (2) (1976). A court sitting in a diversity case is bound to apply the jurisdictional law of the jurisdiction in which it sits. *Gatewood v. Fiat, S.p.A.,* 617 F.2d 820, 822 n. 3 (D.C.Cir.1980). The District of Columbia Code extends personal jurisdiction to nonresident defendants through its long-arm statute, which provides, in relevant part:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

.    .    .    .    .

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside of the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

.    .    .    .    .

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C.Code Ann. § 13–423 (1981). Plaintiffs assert jurisdiction under these subsections, based on three theories which we will consider in turn.

TELEPHONE CONVERSATIONS

Plaintiffs contend that the defendant's utterance of the defamatory statements in the course of telephone communications between him in Massachusetts and New York and individuals within the Dis-

---

1. According to the complaint, William Tavoulareas is a citizen of New York, Peter Tavoulareas is a citizen of Greece, and George Comnas is a citizen of Massachusetts. Complaint ¶¶ 2–4.

trict is sufficient to establish personal jurisdiction for purposes of the present suit. We think otherwise. The defendant's telephone conversations do not amount to tortious acts within the District of Columbia necessary to satisfy the requirements of subsection (a)(3). *Margoles v. Johns,* 483 F.2d 1212 (D.C.Cir.1973), presented a comparable situation. There the plaintiff brought an action for allegedly slanderous comments made in the course of telephone calls placed by the defendant from her office in Wisconsin to the District of Columbia. We rejected the contention that those calls amounted to tortious acts in the District of Columbia, concluding that "[u]nless we wish to delve into a magical mystery tour of 'projecting presences,' we must find that no jurisdiction can be afforded by virtue of section (a)(3)." *Id.* at 1218. Because all of defendant Comnas's acts with respect to the telephone calls took place outside of the District, we find that they do not satisfy (a)(3).

Plaintiffs assert that the telephone conversations in this case nonetheless satisfy (a)(4), since their frequency makes them "a persistent course of conduct." It may indeed—but not, as the statute requires, "a persistent course of conduct *in the District.*" The same non-presence within the District that prevents the calls from being an "act within the District" for purposes of (a)(3) prevents them from being a "course of conduct in the District" for purposes of (a)(4). The *Margoles* court considered and rejected a similar argument. *Margoles v. Johns, supra,* 483 F.2d at 1218 n. 10.

### APPEARANCES BEFORE THE SEC

■ Comnas appeared, pursuant to subpoena, before investigators for the SEC meeting within the District of Columbia on December 18, 1979, February 5, 1980, and October 27, 1980. The plaintiffs allege that Comnas published defamatory statements in these meetings, and seek damages for that initial publication and any subsequent republication. Complaint ¶¶ 5–11 ("[b]y reason of, and as a direct result of, the publication and republication of the statements [before the SEC]"). The district court initially interpreted the complaint to seek damages only for the publication of statements in the *Washington Post,* and rejected the defendant's appearance before the SEC as a basis of jurisdiction because that occurred *after* the newspaper publication. *Tavoulareas v. Comnas,* No. 80–2841, slip op. at 6 (D.D.C. Mar. 22, 1982) (memorandum accompanying order granting motion to dismiss). The court later explained its decision, however, as based on the "absolute[ ] privilege[ ]" accorded testimony in investigations of this type. *Tavoulareas v. Comnas,* No. 80–2841 (D.D.C. May 14, 1982) (order denying motion to amend or alter order of dismissal).

The latter explanation amounted to a determination that the defendant's testimony did not "caus[e] tortious injury in the District of Columbia" and therefore did not come within subsection (a)(3) of the long-arm statute. We agree with the conclusion, but choose to rest our decision upon a somewhat narrower ground. Regardless of whether the defendant's actions caused tortious injury, they did not do so "by an act or omission in the District of Columbia" within the meaning of (a)(3). We interpret that language to mean an act or omission that is voluntary; since the defendant's testimony in the present case was given pursuant to subpoena, it does not qualify.

It is not entirely clear whether the "causing tortious injury" provisions of the D.C. long-arm statute were meant to assert the full scope of extraterritorial jurisdiction which that type of nexus has been held constitutionally sufficient to sustain. *Compare Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808, 810–11 (D.C.1976) (en banc) *with Mouzavires v. Baxter,* 434 A.2d 988, 990–91 (D.C.1981) (en banc), *cert. denied,* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982). It is clear, however, that the D.C. statute, like the Uniform Interstate and International Procedure Act from which it was ultimately derived, did not intend to *exceed* the scope of jurisdiction approved as constitutional by the case law. *See* S.Rep.

No. 405, 91st Cong., 1st Sess. 35 (1969). One of the central points of that case law is the necessity of some voluntary act by which the defendant in effect subjects himself to the laws of the jurisdiction. The Supreme Court has noted that in order to satisfy the requirements of due process "it is essential in each case that there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). *See also World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). It is apparent, therefore, that the "act or omission in the District of Columbia" which is the sole basis of jurisdiction under § 13–423(a)(3) must be an uncoerced one. The giving of testimony in the present case, having been compelled by subpoena, does not suffice.

It might be argued, of course, that although the defendant had no choice but to *testify* in the District of Columbia, he did not have to testify *falsely.* Even as a general matter, such a distinction seems to us unsound. By making jurisdiction turn upon a determination of the merits, it would largely defeat the purpose of the jurisdictional restrictions. But the distinction is particularly unacceptable in the context of the present case, which has substantial policy implications with regard to federal subpoenas. Summoning testimony in an investigative proceeding, pursuant to subpoena authority granted by Congress (the applicable statute here was 15 U.S.C. § 78u(b) (1982)), imposes a significant but socially necessary burden upon the affected citizen. We think it unnecessary and unwise to add to the burden of time and travel, and to the possible liability to civil suit for the testimony (a question we do not reach), the additional burden of defending any such suit in the location to which the witness happens to have been summoned. It is not enough to say that the witness has nothing to fear so long as his testimony is truthful. Establishing the truthfulness in litigation far away from home is a burden in itself. Regardless of whether the long-arm statutes of the *states* are intended to increase, and may without conflicting with federal law increase, the onerousness of federal subpoenas in this fashion, we are not inclined to impute such intent to the federal legislature itself, which authored both the subpoena authority and the long-arm statute at issue in the present case.

Of course a subpoenaed witness may commit other acts within the District—for example, drive negligently to the hearing room—which could be said to be involuntarily committed here, since his presence here was solely for the purpose of appearing in response to the subpoena. It is more speculative to attribute to the Congress (or to the Constitution) an intent to exclude jurisdiction for such actions, which do not constitute the very act of compliance with the subpoena. All we hold today is that the subpoenaed act itself—appearance before, and testimony to, the subpoenaing authority—is not "an act or omission in the District of Columbia" for purposes of its long-arm statute.

### ACTS OF CONSPIRATORS

Plaintiffs contend that the defendant entered into a conspiracy with, among others, reporters for the *Washington Post* to defame them. They argue that since conspirators are responsible for the acts of their coconspirators, those acts performed within the District by members of the conspiracy can be imputed to the defendant to establish personal jurisdiction.

Not only this argument, but even the factual assertion of conspiracy on which it is based, has been made by plaintiffs for the first time during the course of this appeal. Plaintiffs bear the burden of establishing jurisdiction, *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 182, 189, 56 S.Ct. 780, 782, 785, 80 L.Ed. 1135 (1936); *Stone v. United States,* 683 F.2d 449, 454 (D.C.Cir.1982) (dictum), and it must appear on the face of the complaint, Fed.R. Civ.P. 8(a)(1); *Schultz v. Cally,* 528 F.2d 470, 474 (3d Cir.1975). Reliance on a conspiracy theory at the present stage of this litigation must therefore be rejected.

Since none of the asserted bases for personal jurisdiction was valid, the district court correctly granted defendant's motion to dismiss.

*Affirmed.*