**NATIONAL INDUSTRIAL SAND ASSOCIATION, Relator,**

v.

**The Honorable Jay GIBSON, Judge, Respondent.**

**No. D–3855.**

Supreme Court of Texas.

Argued Nov. 16, 1994.

Decided April 27, 1995.

 

 

 

 

 

 

 

 

 

 

 

Benton Jordan Barton, Robert H. (Bob) Frost, Scott W. MacLaren, Dallas, for relator.

M. Diane Dwight, Beaumont, R. Sandy Torres, Midland, Lance P. Bradley, Beaumont, Robert E. White, Odessa, for respondent.

GONZALEZ, Justice, delivered the opinion of the Court, in which HIGHTOWER, HECHT, SPECTOR and OWEN, Justices, join.

This original mandamus action involves the overruling of a special appearance filed pursuant to Rule 120a of the Texas Rules of Civil Procedure. Relator, National Industrial Sand Association (NISA), is a defendant in three consolidated silicosis lawsuits in Ector County. NISA argued that it lacked the minimum contacts with Texas necessary for the trial court to assert personal jurisdiction under the Due Process Clause of the Fourteenth Amendment. U.S. CONST. amend. XIV, § 1; see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985). The trial court held that it had personal jurisdiction

over NISA. NISA then sought leave to file a petition for writ of mandamus with the court of appeals. That court held that NISA's remedy by way of appeal from a final judgment was adequate. 855 S.W.2d 790. We disagree.

■ The remedy of mandamus is "extraordinary" and "available only in limited circumstances." Walker v. Packer, 827 S.W.2d 833, 840 (Tex.1992). Consequently, a writ of mandamus will issue only "to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." Johnson v. Fourth Ct. of Appeals, 700 S.W.2d 916, 917 (Tex.1985) (citing State v. Walker, 679 S.W.2d 484, 485 (Tex.1984)). We recently held in Canadian Helicopters Ltd. v. Wittig, 876 S.W.2d 304, 307 (Tex.1994), that an appeal from a final judgment is ordinarily adequate to remedy denial of a special appearance. However, in Canadian Helicopters, we noted an exception to this rule in cases in which the trial court's assertion of personal jurisdiction is "with such disregard for guiding principles of law that the harm to the defendant becomes irreparable." Id. at 308. Because this case falls within the exception, we conditionally grant the writ of mandamus.

NISA is a non-profit lobbying organization based in Silver Spring, Maryland. It represents members' interests before Congress and various agencies of the federal government in matters affecting the sandblasting industry. It does not manufacture or supply industrial sand or protective equipment. The plaintiffs in the three underlying lawsuits are former sandblasters who contracted silicosis. They sued NISA along with several manufacturers and sellers of sand. The plaintiffs' claims against the latter defendants are based on negligence and products liability. Their theory with regard to NISA is conspiracy. Specifically, the plaintiffs allege that NISA conspired with Texas Mining Company and Lone Star Industries[1] for the purposes of (1) suppressing information on the dangers of silica and (2) defeating the

---

1. Texas Mining Company is a Texas corporation, but Lone Star Industries is not. Lone Star's principal place of business is in California, although it has a registered agent for service of process in this state.

1974 public health movement [2] to ban the use of abrasives containing high levels of silica.

NISA filed special appearances to contest the trial courts' personal jurisdiction in each of the three lawsuits. It provided the following facts. NISA keeps its members informed of developments in federal law through the circulation of periodic letters and other publications. However, NISA has never appeared before or communicated with any member or staff of the Texas Legislature or with any regulatory authority in the state. Only one Texas corporation, Texas Mining Company, is a member of NISA. NISA's only contacts with this state have been periodic mailings of its letters, publications, and notices of acceptance of dues to Texas Mining since the company became a member of NISA in 1976.

The trial court consolidated the three lawsuits for consideration of NISA's special appearances. (In oral argument the Court was informed that there were five cases pending in Ector County and sixteen cases in Jefferson County wherein NISA is a defendant.) In response, the plaintiffs asserted **specific** jurisdiction over NISA based on the alleged conspiracy and general jurisdiction based on the relationship between NISA and Texas Mining Company.

### In Personam Jurisdiction

 The Due Process Clause guarantees that a party cannot be bound to the "judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King,* 471 U.S. at 471–72, 105 S.Ct. at 2181 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945)). In order for a court's assertion of jurisdiction over a nonresident defendant to comport with due process, the defendant must have purposefully established minimum contacts with the forum state such that it could reasonably anticipate being sued in the courts of the state. *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays,* 815 S.W.2d 223, 226–27 (Tex.1991) (explaining

that a party must have fair warning that its activity will subject it to the jurisdiction of the forum). The exercise of jurisdiction also must comport with fair play and substantial justice. *See id.* at 226 (citing *Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84). For a trial court to have specific jurisdiction over a defendant, the cause of action must arise out of or relate to the defendant's contact with the forum state. On the other hand, so long as the defendant has had continuous and systematic contacts with the forum state, a trial court has general jurisdiction even if the cause of action did not arise from the defendant's purposeful conduct in the state. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984); *Guardian Royal,* 815 S.W.2d at 228. A defendant asserting lack of personal jurisdiction by special appearance has the burden of negating all bases of jurisdiction. *Guardian Royal,* 815 S.W.2d at 231 n. 13; *Siskind v. Villa Found. for Educ., Inc.,* 642 S.W.2d 434, 438 (Tex.1982).

NISA presented undisputed evidence that it:

1. Is not and never has been a resident of Texas;
2. Is not required to maintain and has never maintained a registered agent for service in Texas;
3. Does not maintain, and has never maintained a place of business in Texas;
4. Does not have, and has never had any employees or agents in Texas;
5. Has never maintained an office, mailing address, or telephone number in Texas;
6. Has never owned any assets in Texas;
7. Has never paid any taxes in Texas;
8. Has never maintained a bank account in Texas;
9. Has never owned, leased, rented, or controlled any real or personal property in Texas;
10. Has never purchased any tangible items or other personal property in

---

**2.** The scope and nature of the public health movement is not clear from the plaintiffs' pleadings. However, in their response to NISA's spe-

cial appearance, they refer to a proposed ban by the Occupational Safety and Health Administration.

Texas or from a Texas business, citizen, or resident;

11. Has never entered into a contract with any Texas business, citizen, or resident; and

12. Has never held a Board of Directors, officers, or other official meeting in Texas.

We must determine whether the evidence met NISA's burden of demonstrating insufficient minimum contacts to sustain either specific or general personal jurisdiction. Specifically, we must decide if these contacts were so minimal that NISA could not reasonably have foreseen that it would be sued in a Texas court. *See Guardian Royal*, 815 S.W.2d at 227 (discussing that "foreseeability" is one aspect of determining if a defendant has purposefully established minimum contacts in the forum state).

### A. Conspiracy Theory of Jurisdiction

■ The sole theory of liability the plaintiffs assert against NISA is civil conspiracy, and they assert conspiracy as a basis for long-arm jurisdiction. Some courts have recognized civil conspiracy as a separate basis to support the exercise of jurisdiction. *See, e.g., Textor v. Board of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1392 (7th Cir.1983); *Gemini Enters. Inc. v. WFMY Television Corp.*, 470 F.Supp. 559, 564 (M.D. N.C.1979); *see generally* Riback, Note, *The Long Arm and Multiple Defendants: The Conspiracy Theory of In Personam Jurisdiction*, 84 COLUM.L.REV. 506 (1984). The exercise of long-arm jurisdiction based on conspiracy rests on the concept that acts of conspirators in furtherance of the conspiracy are attributable to co-conspirators. *Textor*, 711 F.2d at 1392 (quoting *Gemini*, 470 F.Supp. at 564). Courts have used this theory to assert jurisdiction "over [those] whom jurisdiction would otherwise be lacking." *In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 398, 411 (E.D.Pa. 1981).

Conspiracy as an independent basis for jurisdiction has been criticized as distracting from the ultimate due process inquiry: whether the out-of-state defendant's contact with the forum was such that it should reasonably anticipate being haled into a court in the forum state. Althouse, *The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis*, 52 Fordham L.Rev. 234, 252 (1983). To comport with due process, the exercise of long-arm jurisdiction over a defendant "must rest not on a conceptual device but on a finding that the non-resident, through his relationship with another, has 'purposefully avail[ed] him]self of the privilege of conducting activities within the forum State.'" *Id.* at 252 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). It follows that:

> The relationship may be described in terms of conspiracy, but such a characterization should not mask the real facts of the relationship or avoid analysis of the attribution process. The term "conspiracy" is meaningful only to the extent that it helps to elucidate these facts.

*Id.* at 252–53. In short, "due process will not permit the plaintiff to use insignificant acts in the forum to assert jurisdiction over all co-conspirators." *Id.* at 246.

Over a decade ago, this Court came to the same conclusion. In *Siskind*, 642 S.W.2d at 436, a parent alleged conspiracy between an Arizona operator of a school and its employees to defraud its students. We held that jurisdiction in Texas was proper as to the operator, but not as to the individual employees:

> [The operator's] solicitation of business in Texas cannot be imputed to the individual Respondents so as to render them amenable to suit in Texas. As *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) makes clear, it is the contacts of the defendant himself that are determinative.

*Siskind*, 642 S.W.2d at 437–38. Thus, we decline to recognize the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state. Instead, we restrict our inquiry to whether NISA itself purposefully established minimum contacts such as would satisfy due process, and hold that it did not.

## B. Allegations of General Jurisdiction

In this case, the plaintiffs assert that general jurisdiction over NISA is proper on the basis of systematic and continuous contacts between NISA and Texas Mining, the only member of NISA that is a resident of Texas. However, NISA argues, and the plaintiffs do not dispute, that its only contacts with Texas Mining have consisted of periodic mailing of letters and publications sent to its entire membership. The plaintiffs presented evidence of one other contact between NISA and Texas—the attendance of a meeting of the Silica Safety Association by a NISA official. General jurisdiction requires a showing of continuing and systematic activities in the forum such that jurisdiction is proper without a relationship between the defendant's particular act and the cause of action. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). Mere association is not enough to establish general jurisdiction. *See Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984). NISA's tenuous contacts do not constitute systematic and continuous contacts with Texas necessary for general jurisdiction in conformity with the Due Process Clause. An organization that mails national newsletters and notices of acceptance of dues to a member company in Texas has not purposefully established minimum contacts such that it could reasonably foresee being sued in the courts of this state. *See U–Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 763 (Tex. 1977) (holding that Texas courts could not constitutionally assert general jurisdiction over a defendant which had mailed payments to the plaintiff in Texas under a contract to be performed outside the forum), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978). The plaintiffs have not presented evidence of general jurisdiction.

## C. Allegations of Specific Jurisdiction

When specific jurisdiction is alleged the inquiry is two-pronged: "First, the defendant's activities must have been 'purposefully directed' to the forum, and second, the litigation must result from alleged injuries that 'arise out of or relate to those activities.'" *Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 663 (Tex.1987) (quoting *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2181), *cert. denied,* 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 986 (1988). The plaintiffs seek to establish specific jurisdiction over NISA on the grounds that their claims arose out of NISA's conspiracy with Texas Mining to (1) defeat a government ban on the use of silica and (2) promulgate inadequate warnings regarding the dangers of silica. The plaintiffs first allege that NISA and its members, including Texas Mining, actually opposed a regulatory ban on the use of silica sand, and offer in support two letters from NISA to all its members relating to efforts by NISA and its members to influence National Institute for Occupational Safety and Health (NIOSH) standards and OSHA regulations regarding the use of silica sand. However, petitioning the government for redress on matters of concern to a party is a freedom protected by the Bill of Rights in the federal constitution. *Eastern R.R. Presidents Conference v. Noerr Motor Freight Inc.,* 365 U.S. 127, 138, 81 S.Ct. 523, 530, 5 L.Ed.2d 464 (1961). Just as the United States Supreme Court has held that a campaign directed towards obtaining favorable government action for a party cannot be the subject of antitrust liability, we hold that such actions—including letters reporting the progress of these activities—cannot constitute an overt act in furtherance of a conspiracy. *Id.* at 139–40, 81 S.Ct. at 530–31; *see Diaz v. Southwest Wheel, Inc.* 736 S.W.2d 770, 774 (Tex.App.—Corpus Christi 1987, writ denied). Civil conspiracy is "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex. 1983). The letters at issue here are a legitimate exercise of the right to influence government action. They demonstrate no unlawful purpose or means, and accordingly do not support the exercise of specific jurisdiction by NISA.

The plaintiffs also argue that an alleged conspiracy between NISA and Texas Mining to promulgate inadequate warnings regarding the dangers of silica sand should serve as a basis for the trial court's assertion of specific jurisdiction over NISA. The

plaintiffs' theory of the case is that labels recommended by NISA for silica sand products warned of the dangers of prolonged exposure to silica but failed to warn of the potential dangers of short exposure.[3] Our inquiry must focus on whether NISA demonstrated such minimum contacts with Texas that it could not reasonably foresee being sued in a Texas court regarding the warnings.

The only evidence in the record before the trial court regarding the allegation of inadequate warnings consists of (1) a letter from NISA addressed to all its members passing along a warning promulgated by NIOSH for silica sand products and advising members that they might want to consult their own legal counsel[4]; (2) a deposition excerpt from Robert Curry (corporate identity unknown) that he always took under consideration the recommendations made by NISA regarding warnings and that those warnings would always be discussed by his corporation's legal counsel; and (3) a deposition excerpt from Sherrod Kilmer, a high level executive at Texas Mining, stating that (a) the corporation relied upon and followed the recommen-

dations of NISA to protect the safety and health of its employees, and (b) in regard to a particular warning utilized by Texas Mining in 1987, the corporation weighed all recommendations (including NISA's) and then made its decisions.[5]

There is thus some evidence that NISA wrote letters passing along warnings regarding silica sand to all its members. Specifically, there is evidence that NISA advised its members to consult their own legal counsel, and that Texas Mining did so in developing its warnings. Such evidence is insufficient to support jurisdiction over NISA by a Texas court because it fails to demonstrate that NISA purposefully directed any of its efforts to Texas. In other words, evidence that a nonresident defendant sent allegedly insufficient warnings to its members, including one in Texas, with the recommendation that legal counsel be consulted, does not demonstrate that the plaintiffs' alleged cause of action arises out of or relates to NISA's contact with Texas to support the exercise of specific jurisdiction by a Texas court. In fact, the evidence in the record before the trial court

3. Plaintiffs' original petition states:

Additionally, these defendants and others conspired to suppress the true nature of the hazard of abrasive blasting. These defendants conspired to suppress the truth that sandblasting with high silica containing abrasives could cripple or kill. Instead, these defendants promulgated attempts to inform users that there was a "possibility of developing silicosis as a result of prolonged exposure." These defendants promulgated this message at a time they knew that even short exposures could result in a fatal disease. The direct and proximate result of the conspiracy of these defendants and possibly others was the development of the disease in the plaintiff[s].

4. Specifically, the letter to member companies states:

1. We have been informed that at least two member companies have begun to print labels on bags containing silica sand warning that breathing silica dust may be dangerous. While neither the Occupational Safety and Health Administration nor the Mining Enforcement and Safety Administration has yet promulgated a standard on this, those who ship bagged sand would be well advised, in view of product liability litigation, to print warning labels on bags or barrels.
2. While not yet official, the warning recommended in the Criteria Document on Crystal-

line Silica by the National Institute of Occupational Safety and Health would be appropriate. It reads as follows:
 WARNING!
 CONTAINS FREE SILICA
 DO NOT BREATHE DUST
 May Cause Delayed Lung Injury (Silicosis)
3. Members may wish to consult their counsel as to whether this form is suitable or should be revised.

5. The deposition excerpts were offered to the trial court a week after the court held its hearing on NISA's special appearance. NISA objected to these excerpts on the grounds that they were not served on NISA seven days prior to the special appearance hearing, nor were they taken in a suit in which NISA was a defendant. NISA has renewed these objections in this Court. However, because we hold that the depositions excerpts do not contain evidence of minimum contacts with Texas so as to support jurisdiction over NISA, we need not address their admissibility.

Additionally, the plaintiffs filed an exhibit in this Court which purports to include all the documents produced by NISA in response to the plaintiffs' requests for production. However, it does not appear that these documents were ever filed with or considered by the trial court. We therefore do not consider them as part of the record.

demonstrates that NISA's only contacts with Texas was limited to various correspondence with Texas Mining. That correspondence fails to demonstrate sufficient contact with the state of Texas for in personam jurisdiction.

 Finally, in support of their argument that the trial court may assert specific jurisdiction over NISA, plaintiffs argue that NISA's conduct in opposing a governmental ban of silica sand and its promulgation of inadequate warnings affected Texas residents, including the plaintiffs. This argument is a reprise of the plaintiffs' attempt to attribute the acts of alleged co-conspirators within the forum to NISA to support the exercise of jurisdiction by a Texas court. The mere allegation that the effects of NISA's allegedly tortious behavior resulted in "the development of the disease in the plaintiff," a resident of Texas, is insufficient to confer specific jurisdiction over NISA. Jurisdiction based upon the effects of extra-territorial conduct within a particular forum is proper only when the extra-territorial conduct focuses upon a plaintiff residing in that forum. *Calder*, 465 U.S. at 789, 104 S.Ct. at 1486. In *Calder*, the Supreme Court of the United States held that the mere fact that it was foreseeable that an allegedly slanderous article would be circulated and would have an effect in a particular state was an insufficient basis for an assertion of jurisdiction by that state's court over the non-resident defendants, an author and editor. *Id.* (citing *World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566). Instead, the assertion of jurisdiction over the nonresident defendants by the state of the plaintiff's residence was proper because the defendants' intentional actions were expressly aimed at the plaintiff and the defendants knew that the article would have its most devastating effect in the state in which the plaintiff lived and worked. *Id.* 465 U.S. at 789–90, 104 S.Ct. at 1486–88. In line with *Calder*, the assertion of jurisdiction over NISA by a Texas court based solely upon the effects of the letters mailed to its entire membership is improper.

Therefore, we find no basis for the trial court's assertion of specific or general jurisdiction over NISA. Accordingly, we further conclude that the trial court clearly abused its discretion in overruling NISA's special appearance. In addition, we hold that the erroneous assertion of jurisdiction was so arbitrary and without regard to guiding principles as to place this case within the limited exception recognized in *Canadian Helicopters*, 876 S.W.2d at 308–09. The trial court was not faced with a voluminous record filled with contradictory evidence, but only with the plaintiffs' bare allegations of conspiracy lacking any evidence of conspiratorial acts in or directed to Texas. *See id.* at 309 (citing *Lupo v. Lineberger*, 313 Ark. 315, 855 S.W.2d 293, 294 (1993), which approved extraordinary relief where the undisputed facts in the record suggested no jurisdiction over the petitioner). There was thus no basis on which to assert specific jurisdiction. Moreover, NISA's "contacts" were not so continuous and systematic that the exercise of general jurisdiction could comport with the due process requirements of "fair play and substantial justice." *See Guardian Royal*, 815 S.W.2d at 226 (quoting *Burger King*, 471 U.S. at 475–76, 105 S.Ct. at 2183–84). In this case, the "total and inarguable absence of jurisdiction" justifies extraordinary relief. *Canadian Helicopters*, 876 S.W.2d at 309 (quoting *Barnes v. Thomas*, 96 Wash.2d 316, 635 P.2d 135, 136–37 (1981)). An ordinary appeal is inadequate to remedy the irreparable harm to NISA caused by the trial court's denial of the special appearance. *See id.* at 308–09.

Because the traditional elements of personal jurisdiction are totally absent in this case, we conditionally grant NISA's petition for writ of mandamus. Writ will issue only if the trial court fails to withdraw the order overruling NISA's special appearance to sustain the same.

CORNYN, Justice, joined by PHILLIPS, Chief Justice, GAMMAGE and ENOCH, Justices, dissenting.

To be entitled to the extraordinary relief of a writ of mandamus, a party must show two things: that the trial court abused its discretion *and that ordinary appeal would not be an adequate remedy.* Failure to show that an appeal would cause more than ordinary

expense and delay is not enough. That was the reason we denied mandamus relief in *Canadian Helicopters Ltd. v. Wittig,* 876 S.W.2d 304 (Tex.1994), and that is the reason we should deny mandamus relief in this case. Regardless of whether the trial court abused its discretion in determining jurisdiction, NISA has failed to show that it lacks an adequate remedy by appeal. Accordingly, I respectfully dissent.

In *Wittig,* the Court specifically held that a challenge to personal jurisdiction "may ordinarily be adequately reviewed on appeal." 876 S.W.2d at 307. We noted at least two possible situations in which an appeal might be inadequate, cases implicating the parent-child relationship and cases implicating comity in foreign affairs. *Id.* at 307. We also stated:

> We do not foreclose the possibility that a trial court, in denying a special appearance, may act with such disregard for guiding principles of law *that the harm to the defendant becomes irreparable,* exceeding mere increased cost and delay. In such a situation, a defendant's remedy by appeal *may be inadequate* and mandamus may therefore be appropriate.

*Id.* at 308–09 (emphasis added). This language, relied on by the Court to effect review of this case, does not in any way dispense with the required showing of inadequate appellate remedy. Neither NISA nor the Court even offers an argument that an appeal in this case will be inadequate. NISA makes no argument that it will suffer any particular harm as a result of being put to an appeal other than that being put to trial will violate its right to due process. This Court rejected that very argument in *Wittig,* based on a unanimous opinion from the United States Supreme Court holding that ordinary appeal from an order denying a defendant's motion to dismiss for lack of personal jurisdiction was adequate "[b]ecause the right not to be subject to a binding judgment may be effectively vindicated following final judgment." *Id.* at 307–08 (quoting *Van Cauwenberghe v. Biard,* 486 U.S. 517, 526–27, 108 S.Ct. 1945, 1951–52, 100 L.Ed.2d 517 (1988)).

Despite our recent reaffirmation that an inadequate appellate remedy is a "fundamental tenet" of mandamus practice, *Walker v. Packer,* 827 S.W.2d 833, 842 (Tex.1992), the Court proceeds without distinguishing this case from *Wittig* or explaining how NISA's appellate remedy is inadequate. If the Court is free to ignore that tenet in this case, it may as well begin issuing extraordinary writs to correct denials of summary judgments.