**Maurits L. DE PRINS, Appellant,**

v.

**Willy VAN DAMME, F. Crols, and Trends, N.V., Appellees.**

**No. 12–97–00082–CV.**

Court of Appeals of Texas, Tyler.

July 31, 1997.

8

David M. Taylor, Gary C. Wallace, Joseph J. Mastrogiovanni, Dallas, for appellant.

Louis P. Bickel, Michael Lowenberg, P.C., James R. Lancaster, Jeffrey Goldfarb, Akin, Gump, Strquss, Hauer & Feld, L.L.P., Dallas, Otis Carroll, Ireland, Carroll & Kelley, P.C., Tyler, for appellees.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Maurits L. De Prins ("De Prins"), plaintiff below, appeals the order of the trial court sustaining defendants' Willy Van Damme ("Van Damme"), F. Crols ("Crols"), and Trends, N.V. ("Trends") (collectively "Appellees") special appearance and dismissal for lack of jurisdiction. Two points of error are assigned. We will **affirm.**

According to the record, De Prins is a Belgian resident and citizen. Van Damme is a journalist, and a citizen and resident of Belgium. Trends is a Belgian corporation that publishes a Belgian magazine called "Trends." Crols, a citizen and resident of Belgium, is the editor-in-chief of Trends.

In his lawsuit, De Prins asserted that Van Damme, while at home in Belgium, telephoned two residents of Texas. During these phone conversations, the journalist allegedly slandered De Prins by claiming that he had been indicted, was the subject of investigations in Belgium, and owed millions of dollars. De Prins further maintained that Van Damme was within the course and scope of his employment or was the agent of Trends while making these calls in preparation for writing an article on the activities of De Prins and the Super Club. De Prins filed suit against the journalist, the magazine, and the editor, contending that the statements made to the Texas residents were untrue and damaging to his reputation.

Pursuant to Tex.R. Civ. P. 120a, Appellees filed special appearances supported by affidavits in a plea to the jurisdiction of the court. These sworn statements alleged that Van Damme was a freelance journalist and that he only occasionally sold articles to Trends for publication. The affidavits also stated the following grounds for dismissal of the lawsuit: 1) none of the defendants had any previous substantial contacts with the State of Texas; 2) requiring them to defend the case in Texas would be burdensome because

of language and unfamiliarity with the laws of Texas; 3) Belgium would be the most consistent forum to litigate the dispute; 4) the expense would be great; 5) Van Damme was physically incapacitated and could not appear in Texas; and 6) requiring them to appear and answer would not comply with the constitutional mandate of "fair play and substantial justice" under the due process clause of the Fourteenth Amendment. De Prins objected to the defendants' affidavits in regards to lack of "minimum contacts," complaining that the information provided by the affidavits had not been properly produced in supplemental response to his discovery requests. The trial court proceeded to dismiss all defendants for lack of jurisdiction.

In his first point of error, De Prins claims that the record establishes jurisdiction as a matter of law. He alleges that since Appellees failed to dispute Van Damme's telephone calls, the content and falsity of Van Damme's statements, or that the slander occurred in Texas, Texas courts have specific jurisdiction over them.

■ Appellees argue that De Prins did not assert a point of error challenging the district court's analysis of the "fair play and substantial justice" factors, nor expressly challenge any underlying factual finding. Consequently, he cannot attack the legal sufficiency of the trial court's conclusion. We disagree. In order to adjudicate the rights of the litigants justly, fairly, and equitably, we will construe De Prins' point of error liberally. *Anderson v. Gilbert*, 897 S.W.2d 783, 784 (Tex.1995).

For a more definitive understanding of the issues before the trial court and upon what factors it based its decision, the trial court's findings of fact and conclusions of law are set forth below.

## I. FINDINGS OF FACT

1. Plaintiff Maurits L. De Prins is a Belgian citizen. Plaintiff resides in Belgium.

2. Trends, N.V., is a corporation organized under the laws of Belgium. Trends publishes a magazine called *Trends*. *Trends* is published in the Dutch language. *Trends* is a Belgian business publication with its offices in Belgium.

3. Trends does not maintain, and is not required to maintain, a registered agent in Texas. Trends has never maintained a place of business in Texas, and has never had or maintained employees, servants or agents in Texas. Trends has never owned any property or any business located in Texas.

4. Trends has no subscribers in the state of Texas. Trends has no agreements with any person or entity for distribution of its magazine in the United States.

5. Trends has never recruited any employees in Texas. Trends has never contracted with any individual or business entities in Texas. Trends has never owned real or personal property in Texas or the United States. Trends has never conducted any marketing or advertising in Texas. Trends has never applied for or received loans or lines of credit with or from any financial institution in Texas.

6. Trends has never called or written anybody in Texas about Maurits L. De Prins at any time nor had anyone do so.

7. Since 1986, there have been only two occasions when an employee of Trends went to Texas. In or about 1986, a Belgian employee of Trends went to Dallas to interview a Belgian businessman. In approximately September 1995, a Belgian employee of Trends, while elsewhere in the United States on other business, went to Dallas/Fort Worth to search public real estate records.

8. Frans Crols is editor-in-chief of *Trends* and has been since 1986. Frans Crols is a citizen and resident of Belgium, and his native language is Dutch. Mr. Crols lives in Antwerp, Belgium.

9. Frans Crols has never been to Texas. Frans Crols has never maintained a residence or place of business in Texas, and has never had or maintained employees, servants, or agents in Texas.

Frans Crols has not ever owned any property or any businesses located in Texas.

10. Frans Crols has never recruited any employees in Texas. Mr. Crols has never contracted with any individuals or business entity in Texas. Mr. Crols does not own or lease, and has never owned or leased, any oil, gas or mineral interest in Texas.

11. Other than the above-captioned cause, Frans Crols has never appeared in any Texas court or been named as a party to any legal proceeding in Texas. Mr. Crols has never paid taxes to any Texas governmental agency. Mr. Crols has never had a bank account, investments or brokerage accounts in Texas. Mr. Crols has never applied for or received loans or lines of credit with or from any financial institution in Texas. Mr. Crols has never conducted any marketing or advertising in Texas.

12. Other than the lawyers associated with the above-captioned matter, Mr. Crols has never employed any lawyer, accountant, consultant or independent contractor in Texas. Mr. Crols has never been a shareholder of any Texas corporation or any corporation with its principal place of business in Texas.

13. Mr. Willy Van Damme is a resident and citizen of Belgium.

14. Mr. Willy Van Damme has never been an employee of Trends, N.V. Trends pays Mr. Van Damme only for articles he submits which are published in the magazine. No one with Trends ever instructed Willy Van Damme in any detail or manner of his work as a freelance writer. No one with Trends was aware that Mr. Van Damme called anyone in Texas or the United States at any time with reference to Maurits L. De Prins or anything else. No one at Trends instructed him to do so. There has never been any instruction for Willy Van Damme to call anyone anywhere.

15. Mr. Van Damme has never been to Smith County or any other county in Texas. Mr. Van Damme has never been to the United States. Mr. Van Damme has never maintained a residence or place of business in Texas, and has never had employees, servants or agents in Texas. Mr. Van Damme does not own and has never owned any property or any businesses located in Texas. Mr. Van Damme has never had any offices or employees in Texas. Mr. Van Damme has not ever recruited any employees in Texas. Mr. Van Damme has never contracted with any individuals or business entities in Texas.

16. Mr. Van Damme does not and has never owned any real or personal property in Texas or the United States. Mr. Van Damme does not own or lease, and has never owned or leased, any oil, gas or mineral interest in Texas. Other than the above-captioned case, Mr. Van Damme has never appeared in any Texas court or been named as a party to any legal proceeding in Texas. Mr. Van Damme has never paid taxes to any Texas governmental agency. Mr. Van Damme has never had any bank account, investments or brokerage accounts in Texas. Mr. Van Damme has never applied for or received loans or lines of credit with or from any financial institution in Texas. Mr. Van Damme has never conducted any marketing or advertising in Texas. Other than those associated with this case, Mr. Van Damme has never employed any lawyer, accountant, consultant or independent contractor in Texas. Mr. Van Damme has never been a shareholder of any Texas corporation or any corporation with a principal place of business in Texas.

17. Mr. Van Damme is a freelance journalist. Since 1979, Mr. Van Damme has submitted articles to *Trends* for publication. Mr. Van Damme receives payment from Trends only for stories he submits which are published in the magazine.

18. In the course of investigating and preparing articles for *Trends* magazine concerning Maurits L. De Prins, Mr. Van Damme consulted with various individual sources. He assured such sources that their identities, and in some cases, information, would be kept confidential.

19. In the course of his investigation, Mr. Van Damme made inquiries over the telephone to four persons in Texas on the subject of Mr. De Prins, one of which was to James Chris Miller. The other three were with confidential sources. One refused to give Mr. Van Damme any information. The remaining two telephone calls to persons other than Mr. Miller were of limited duration. All of these inquiries took place within the course of one week. Mr. Van Damme made all telephone calls to Texas concerning Mr. De Prins from his home in Belgium. One of the four telephone calls was to Darrell Baldwin.

## II. CONCLUSIONS OF LAW

1. Defendant Trends, N.V., is not subject to jurisdiction because it did not and has not ever purposely established minimum contacts with Texas.

2. Defendant Frans Crols is not subject to jurisdiction because he has never purposefully established minimum contacts with Texas.

3. Defendant Willy Van Damme is not subject to jurisdiction because he has never purposefully established minimum contacts with Texas.

4. The Court's assumption of jurisdiction over Defendant Trends, N.V., will offend the traditional notions of fair play and substantial justice and is inconsistent with the constitutional requirements of due process.

5. The Court's assumption of jurisdiction over Defendant Frans Crols will offend the traditional notions of fair play and substantial justice and is inconsistent with the constitutional requirements of due process.

6. The Court's assumption of jurisdiction over Defendant Willy Van Damme will offend the traditional notions of fair play and substantial justice and is inconsistent with the constitutional requirements of due process.

7. The Court believes the case of *Tavoulareas v. Comnas*, 720 F.2d 192 (D.C.Cir.1983) to be dispositive of the issue of jurisdiction in a defamation case brought in the circumstances alleged in this case.

8. The Court believes the case of *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 776 (Tex.1995) ("Jurisdiction based upon the effects of extraterritorial conduct within a particular forum is proper only when the extraterritorial conduct focuses upon a plaintiff residing in that forum.") is further dispositive of the issues in this case.

The standard of review of a plea to the jurisdiction is a factual sufficiency review, not a *de novo* review. *See Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 632 (Tex.App.—Dallas 1993, writ denied). As the trier of fact, the trial judge may draw reasonable inferences from the evidence. *IFG Leasing Co. v. Ellis*, 748 S.W.2d 564, 565–66 (Tex.App.—Houston [1st Dist.] 1988, no writ). We may not disregard his findings of fact on appeal if the record contains some evidence of probative value from which these inferences may be drawn, or unless the findings are so contrary to the overwhelming weight of the evidence as to be manifestly wrong. *Valencia v. Garza*, 765 S.W.2d 893, 896 (Tex.App.—San Antonio 1989, no writ). Although a party may not challenge a trial court's conclusions of law for factual sufficiency, we may review the conclusions the trial court draws from the facts to determine their correctness. *Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *overruled on other grounds, Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 894 (Tex.1991).

A Texas court may exercise jurisdiction over a nonresident if the Texas long-arm statutes authorize the exercise of jurisdiction, and if the exercise of jurisdiction is

consistent with state and federal constitutional guarantees of due process. *Guardian Royal Exch. v. English China,* 815 S.W.2d 223, 226 (Tex.1991); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990). Found at TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041–17.069 (Vernon 1986), the statutes specifically authorize the exercise of jurisdiction over nonresidents "doing business" in Texas. When a person "commits a tort in whole or in part in [Texas]" he is, by statutory mandate, "doing business." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1986). De Prins correctly argues that the tort of slander occurs in the state in which it is heard, *i.e.,* published or circulated. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 777, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984). We will assume, therefore, for the purposes of the following discussion, that Appellees were "doing business" in the State of Texas. The proper focus in determining if a nonresident is subject to the jurisdiction of Texas courts, however, is constitutional limitations of due process, not technical definitions of "doing business." *Wright Waterproofing Co. v. Applied Polymers,* 602 S.W.2d 67, 70 (Tex.Civ. App.—Dallas 1980, writ ref'd n.r.e.).

In order to comply with the federal constitutional requirements of due process, the plaintiff must initially show that the defendant had established "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *In re S.A.V.,* 837 S.W.2d 80, 85 (Tex.1992); *Guardian Royal,* 815 S.W.2d at 230. "Minimum contacts" is a prerequisite because a fundamental goal of the due process test is to protect nonresident defendants. *Schlobohm,* 784 S.W.2d at 357. There must be a "substantial connection" between the defendant and Texas arising from action or conduct of the defendant purposefully directed toward Texas. *Guardian Royal,* 815 S.W.2d at 230. The trial court must examine whether the nonresident defendant has "purposefully availed" itself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its laws. *Id.* at 226. The concept of "purposeful availment" insures that a nonresident will not be hailed into a jurisdiction based upon "random,"

"fortuitous," or "attenuated" contacts with the forum. *Id.* The purported contacts, whether drawn from conduct occurring inside or outside the forum, must justify a conclusion that the defendant should reasonably anticipate being called into that forum's courts. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Guardian Royal,* 815 S.W.2d at 226.

Jurisdiction may be established by evidence of either specific or general jurisdiction. De Prins claims that Texas courts have specific jurisdiction over Appellees. When this type of jurisdiction is asserted, the cause of action must arise out of, or relate to, the nonresident defendant's contacts with Texas. *Schlobohm,* 784 S.W.2d at 357. It requires a "substantial connection between the nonresident's action or conduct directed toward Texas and the cause of action in Texas." *Memorial Hospital System v. Fisher Ins. Agency, Inc.,* 835 S.W.2d 645, 650 (Tex.App.—Houston [14th Dist.] 1992, no writ). The concept of specific jurisdiction focuses on "the relationship between the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977).

At a special appearance hearing, defendants asserting lack of personal jurisdiction have the burden of negating all bases of jurisdiction. *Guardian Royal,* 815 S.W.2d at 231 n. 13; *Siskind v. Villa Foundation for Educ., Inc.,* 642 S.W.2d 434, 438 (Tex.1982). On appeal we must review the record to determine if the Appellees negated every possible ground for personal jurisdiction. *Gen. Elec. Co. v. Brown & Ross Int'l. Dist., Inc.,* 804 S.W.2d 527, 529–30 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

The analysis into whether in personam jurisdiction will lie does not stop there, however. In addition to "minimum contacts," constitutional due process also requires that the assertion of personal jurisdiction comports with traditional notions of "fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Ct. of Cal.,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92

(1987); *S.A.V.*, 837 S.W.2d at 85; *Guardian Royal*, 815 S.W.2d at 231. Application of the concept of "fair play and substantial justice" requires the court to consider the following factors, when appropriate: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi*, 480 U.S. at 113, 107 S.Ct. at 1033; *Guardian Royal*, 815 S.W.2d at 231. The Texas Supreme Court has stated that courts need not consider steps (4) and (5) in international disputes between foreign nationals. *Guardian Royal*, 815 S.W.2d at 232 n. 17.

■ When, as in the present case, the defendants are foreign nationals, the court must consider the reasonableness of stretching the long arm of personal jurisdiction over national borders. *Asahi*, 480 U.S. at 115–17, 107 S.Ct. at 1034; *Guardian Royal*, 815 S.W.2d at 229. We should, therefore, also consider the following factors: (a) the unique burdens placed upon the defendant who must defend itself in a foreign legal system; and (b) the procedural and substantive policies of other nations whose interests are affected, as well as the federal government's interest in its foreign relations policies. *Asahi*, 480 U.S. at 115, 107 S.Ct. at 1034; *Guardian Royal*, 815 S.W.2d at 229.

■ As stated in its conclusions of law, the trial court relied upon *Tavoulareas v. Comnas*, 720 F.2d 192 (D.C.Cir.1983), and *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769 (Tex.1995) in holding that the court had no jurisdiction over Appellees. De Prins argues that the trial court's reliance upon these cases as being dispositive of the issues in this suit is misplaced. We disagree.

In *Tavoulareas*, the court held that the District of Columbia had no long-arm jurisdiction where a defamation suit was based upon telephone calls made to the District from outside the area, and where neither defendant nor plaintiff were residents of the District. De Prins attempts to distinguish *Tavoulareas* from the instant case because the District's statute was not as far reaching as the Texas counterpart, failing to extend as far as permitted by the U.S. Constitution. The District's long-arm statute reads in relevant part:

The District of Columbia may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim of relief arising from the person's . . .

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causes tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does business, engages in any other persistent course of conduct . . . in the District of Columbia.

D.C.Code Ann. § 13–423 (1981).

■ We are unable to discern any substantial difference in application of the two statutes on the issue to be decided. Both the Texas statute and the District of Columbia statute attempt to authorize jurisdiction over persons *outside* the forum who commit a tort *in* the forum. Both statutes are required to pass constitutional due process muster. We interpret *Tavoulareas* as standing for the proposition that in a slander suit, long-arm jurisdiction is not sufficiently established for constitutional purposes when both the plaintiff and defendant are nonresidents, and when the only contact involves telephone calls into the forum jurisdiction.

In *National Indus. Sand Ass'n*, our Supreme Court rejected nonresidential specific personal jurisdiction based solely upon *effects or consequences* of alleged conspiracy with Texas residents. There, the Court said:

Jurisdiction based upon the *effects* of extraterritorial conduct within a particular forum is proper only when the extraterritorial conduct focuses upon a *plaintiff residing in that forum*. *Calder*, 465 U.S. at 789, 104 S.Ct. at 1486. In *Calder*, the Supreme Court of the United States held that the mere fact that it was foreseeable that an allegedly slanderous article would be circulated and would have an effect in a particular state was an insufficient basis

for an assertion of jurisdiction by that state's court over the nonresident defendants, an author and editor. *Id.* (citing *World–Wide Volkswagen,* 444 U.S. at 295, 100 S.Ct. at 566). Instead, the assertion of jurisdiction over the nonresident defendants by the state of the plaintiff's residence was proper because the defendants' intentional actions were *expressly aimed at the plaintiff and the defendants knew that the article would have its most devastating effect in the state in which the plaintiff lived and worked. Id.* 465 U.S. at 789–90, 104 S.Ct. at 1486–88. (emphasis ours).

*National Indus. Sand Ass'n v. Gibson,* 897 S.W.2d at 776. We can determine no material difference in the "effects" of the conspiracy in *National Indus. Sand Ass'n* and the "effects" of the defamation alleged in the instant case.

■ For the purpose of our analysis, we accept as true that Van Damme did make the allegedly defamatory statements to Texas residents, that he established "minimum contacts" when he did so, and that De Prins' lack of Texas citizenship or residency is not controlling.[1] Having said that, the trial court had sufficient evidence that jurisdiction would be contrary to the traditional notions of "fair play and substantial justice." In so finding, we give due deference to the trial court's hierarchial fact-finding duties.

In making this determination, we are mindful that the U.S. Supreme Court addressed this issue, and held that the facts of each case must be weighed to determine whether personal jurisdiction would comport with "fair play and substantial justice." *Kulko v. Superior Court of California,* 436 U.S. at 84, 92, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132 (1978). And any inquiry into the reasonableness and fairness of requiring a defendant to defend himself in a foreign state necessarily requires determinations in which "few answers will be written in black and white." *Id.* "The greys are dominant and

even among them the shades are innumerable." *Id.*

The present dispute is wholly between Belgium citizens. The alleged slanderous telephone conversations were: 1) made from Belgium; 2) during an investigation of another Belgian; 3) concerning affairs which occurred in Belgium; 4) to Texas citizens. There appears to be no assertion in the record that any occurrence or issue involves a resident of Texas. Nor did De Prins assert that he lacked a convenient forum in Belgium in which he could seek justice. Belgium has every interest in providing a remedy in a forum for the present dispute between its own citizens. Neither the State of Texas nor its citizens has a substantial interest in this dispute. It is unreasonable to require Appellees to defend themselves in a foreign country against charges which may require proof from other Belgium citizens. It is evident that nearly all of the documents and witnesses to defend this suit are beyond the practical reach of the court's subpoena power. Distance and language barriers would seriously hamper communication and trial preparation. Appellees, as well as De Prins, would incur substantial travel and translation expenses, as well as escalating litigation costs. There is evidence in the record that Van Damme suffers from health conditions that would make travel particularly onerous and burdensome.

The only Texas interest alleged is the convenience to potential nonparty witnesses who reside in Texas. This argument is not sufficiently compelling to outweigh the severe burden on Appellees and the drain on Texas judicial resources. Furthermore, the trial court could reasonably conclude that Texas jurisdiction of this case might unconstitutionally regulate the affairs of foreign parties and unreasonably interfere with the federal government's interest in conducting international relations, as well as Belgium's public interest in regulating its own affairs and resolving the disputes among its residents. *See World–Wide Volkswagen,* 444 U.S. at 292–94, 100 S.Ct. at 564–65 (holding that

---

1. It is unnecessary that the plaintiff be a resident of or have even "minimum contacts" with the forum state to allow the assertion of jurisdiction. *Keeton,* 465 U.S. at 779, 104 S.Ct. at 1480–81.

*Keeton* does not hold, however, that the court *cannot* consider the plaintiff's nonresidency as a factor in the determination of a fair and convenient forum.

minimum contacts requirement ensures fairness to defendants and prevents states from treading upon each others sovereignty). We are not unmindful of the fact that by honoring the sovereignty and judicial systems of foreign nations, we encourage a reciprocal respect, thereby reducing the risk that the foreign nations will invade the domain of the United States. *See Asahi*, 480 U.S. at 113–15, 107 S.Ct. at 1033–34 (California's interests in the lawsuit were slight and did not support the extension of jurisdiction over the nonresident defendant where the dispute was between two foreign corporations concerning a transaction that occurred in a foreign country); *Guardian Royal*, 815 S.W.2d at 232–33 (Although minimum contacts were otherwise satisfied, Texas had a diminished interest in adjudicating a dispute between two foreign insurance companies, such that fair play and substantial justice required dismissing for lack of personal jurisdiction). As stated by our Supreme Court:

> [The interest of other nations], as well as the Federal Government's interest in its foreign relations policies, will best be served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by the minimal interests on the part of the plaintiff or the forum state. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."

*Guardian Royal*, 815 S.W.2d at 228–29 (quoting *Asahi*, 480 U.S. at 115, 107 S.Ct. at 1034–35). (other citations and quotations omitted).

The trial court correctly evaluated the previously enumerated factors and properly concluded that if the court maintained jurisdiction of Appellees, it would offend "traditional notions of fair play and substantial justice." The district court's legal analysis is supported by the record. Point of error number one is overruled.

In his second point of error, De Prins claims that the trial court erred when it overruled his objection to the admission of evidence offered by Trends and Crols as to their lack of minimum contacts. His claim is based upon the defendants' supposed failure to produce that evidence in response to his First Set of Interrogatories.

Upon being served with citation, Appellees all filed Special Appearances. Van Damme's pleadings incorporated the journalist's affidavit, and Crols' and Trends' pleadings incorporated the editor's affidavit. De Prins served Appellees with Interrogatories, and Crols and Trends filed separate objections and responses thereto. Interrogatory No. 8 made the following inquiry:

> **INTERROGATORY NO. 8:** Identify each and every contact you have had in Texas and/or the United States regarding Maurits De Prins or Super Club since January 1, 1994.

The objections and responses to Interrogatory No. 8 by both Trends and Crols were as follows:

> **ANSWER:** [Trends/Crols] incorporates each and every of the incorporated objections set forth in Section I. [Trends/Crols] objects to this interrogatory as it is overbroad and exceeds the scope of Texas Rule of Civil Procedure 120(a). Without waiving these objections, [Trends/Crols] responds that it will supplement this response.

Trends and Crols never formally supplemented this answer, but Van Damme and Crols mailed their second affidavits and their interrogatory responses to De Prins at the same time. Eight days before Appellees' special appearance hearing, De Prins filed a TEX. R. CIV. P. 215(5) motion to exclude any evidence that showed that Appellees had no minimum contacts with Texas. The basis for this motion was that Trends' and Crols' sole response to Interrogatory No. 8 was an undertaking to supplement, which they failed to do. In the alternative, De Prins asked the trial court to compel a response by Trends and Crols to his interrogatory. Trends and Crols argued that Van Damme's and Crols' second affidavits constituted "supplementation" of their interrogatory responses. Trends and Crols did not reassert any objections to Interrogatory No. 8. At the special appearance hearing, Appellees contested De

Prins' assertion that he had set the 215(5) matter for hearing on the same day. Because of the court's reticence in hearing any proceeding before the special appearance, the trial court considered De Prins' rule 215(5) motion as an objection to the admission of the evidence. De Prins objected on the record to the admission of the affidavits, but the trial court overruled his objection and admitted the affidavits. De Prins' maintains the following: 1) the affidavits constituted the only evidence before the trial court bearing on the lack of minimum contacts by Appellees; 2) violation of TEX. R. CIV. P. 215(5) resulted in the loss of the opportunity to offer the responsive evidence; and 3) the sanction was automatic, unless the offering party showed good cause why the evidence should be admitted. Rule 215(5) of the Texas Rules of Civil Procedure states the following:

> A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response ... unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record.

TEX.R. CIV. P. 215(5).

The sufficiency of answers to any given set of interrogatories must be decided on a case by case basis. "Provided that the opponent can determine which interrogatories they answer, supplemental responses need not be preceded by the particular questions eliciting them ... [nor must] ... supplemental responses ... be labeled 'Supplemental Responses.'" *Melendez v. State*, 902 S.W.2d 132, 136 (Tex.App.—Houston [1st Dist.] 1995, no writ). Crols' second affidavit sets forth in detail Trends' and Crols' Texas contacts. De Prins recognized that the second affidavits of both Crols and Van Damme addressed information sought by Interrogatory No. 8, as he relies on Van Damme's second affidavit for his minimum contacts arguments. Further, the affidavits provided answers that corresponded directly to the subparts of several interrogatories. *See Id.* at 136 (holding that expert report was "obviously" a supplementation of an interrogatory response "whether or not it was labeled as such"); *Soeffje v. Stewart*, 847 S.W.2d 311, 312, 314 (Tex.App.—San Antonio 1992, writ denied) (holding that letters identifying potential witnesses supplemented interrogatory responses).

De Prins contends that the affidavits failed to supplement the response to Interrogatory No. 8 because the interrogatory "asked for a description of all contacts that Trends and Crols *do* have with the state of Texas" and the affidavits "describe only the *specific* contacts that Trends and Crols *do not have* with the state of Texas." This argument misconstrues the record. While the second Crols affidavit reflects Trends' and Crols' dearth of Texas contacts, it nevertheless discloses the random, fortuitous, and attenuated contacts Trends and Crols *have* had with Texas. Thus, Trends and Crols substantially responded to Interrogatory No. 8.

De Prins' proposed application of rule 215(5) exalts form over substance and disregards the rule's spirit and intent. Texas courts have rejected such an interpretation. *See F.D.I.C. v. Mediplex of Houston Ltd.*, 889 S.W.2d 464 (Tex.App.—Houston [14th Dist.] 1994, writ dism'd by agr.); *see also Solvex Sales Corp. v. Triton Mfg. Co.*, 888 S.W.2d 845, 847 (Tex.App.—Tyler 1994, writ denied). Rule 215(5) is not simply a "procedural trap for the unwary." *Solvex*, 888 S.W.2d at 847. Rather, its purpose is to require complete responses to discovery to promote realistic assessment of potential settlement and prevent trial by ambush. *Gee*, 765 S.W.2d at 396.

Furthermore, the special appearance hearing contemplated by Rule 120a is separate and distinct from any hearing on the merits of the underlying suit. The purpose of this proceeding is to determine initially if the trial court should assert authority over the defendant(s). The court is mandated to "determine the special appearance on the basis of the pleadings, any stipulations by and between the parties, such *affidavits* and attachments as may be filed by the parties, the result of discovery processes, and any

oral testimony." TEX.R. CIV. P. 120a. Any failure to supplement at this point in the proceedings, therefore, did not make the affidavits inadmissible for the purpose of constitutional determination of jurisdiction. We hold that the trial court did not abuse its discretion when it considered the affidavits for the purpose of determining jurisdiction.

Appellant's point of error two is overruled, and the trial court's judgment is **affirmed.**