# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00276-CV

**Westar Energy, Inc., Appellant**

**v.**

**James Sylvester, Ken Yarborough and Josephine Miller, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
## NO. GN401506, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Westar Energy, Inc., appeals the denial of its special appearance, asserting that there is no evidence in the record to support the trial court's determination that it has specific personal jurisdiction over Westar. Because Westar established that it did not purposefully avail itself of the benefits and protections of Texas law, we will reverse the order and render judgment dismissing the claims against Westar.

## BACKGROUND

Appellees James Sylvester, Ken Yarborough, and Josephine Miller each ran as Democratic candidates for the Texas House of Representatives in 2002 and were defeated by their Republican opponents. Alleging that those opponents had received campaign funds from the Texans

for a Republican Majority Political Action Committee ("TRMPAC") and that TRMPAC had violated the Texas Election Code by accepting and failing to report illegal contributions, in 2004 the appellees filed suit against several TRMPAC officers and corporate donors. Westar was one of the corporations named as a defendant.

Westar filed a special appearance and attached as supporting evidence two affidavits—one from its general counsel and the other from its former vice president of public affairs. The appellees did not file a response to Westar's special appearance. Following a brief hearing, the trial court denied Westar's special appearance. Upon Westar's request, the trial court subsequently entered findings of fact and conclusions of law. Westar now appeals, challenging the order on the grounds that (1) the appellees failed to sufficiently plead a basis for personal jurisdiction and (2) the findings of fact and conclusions of law issued by the trial court do not support the exercise of personal jurisdiction over Westar.

**ANALYSIS**

A nonresident defendant who has been denied a special appearance may bring an interlocutory appeal of the order, and we will review *de novo* the legal question of whether a Texas court can properly exercise personal jurisdiction over the nonresident. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2004-05); *BMC Software Belgium, N.V. v. Marchland*, 83 S.W.3d 789, 794 (Tex. 2001). It is appropriate for a Texas court to exercise personal jurisdiction over a nonresident defendant when it is authorized by the Texas long-arm statute and comports with the constitutional guarantees of due process. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 1997); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). Because the broad language of the Texas

statute allows it to reach as far as the federal Constitution permits, the due process analysis under state law is consistent with the federal test. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

A nonresident defendant may be subject to the jurisdiction of Texas courts based on a finding of either general or specific personal jurisdiction. *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414-15 (1983). Because the appellees in this case did not argue for the exercise of general jurisdiction over Westar in either their pleadings or their brief, our inquiry is confined to whether specific jurisdiction exists over Westar. A three-prong test must be satisfied to determine that the exercise of specific jurisdiction complies with the long-arm statute and due process guarantees: (1) the nonresident defendant must purposefully do some act or consummate some transaction as to establish minimum contacts with the forum state, (2) the cause of action must arise from or be related to these contacts, and (3) the assumption of jurisdiction by the forum state must not offend the traditional notions of fair play and substantial justice. *Schlobohm*, 784 S.W.2d at 358.

### Sufficiency of Pleadings

In seeking to litigate in Texas, plaintiffs bear the initial burden of establishing that a Texas court may appropriately exercise personal jurisdiction over a nonresident defendant. *American Type Culture Collection v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). To satisfy this burden, a plaintiff must plead sufficient factual allegations that, if true, would make the nonresident subject to personal jurisdiction in Texas according to the three-prong test. *See Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 496 (Tex. 1988). When the nonresident defendant files its

3

special appearance, it assumes the burden of affirmatively negating all bases of jurisdiction alleged by the plaintiff. Tex. R. Civ. P. 120a; *Coleman*, 83 S.W.3d 807.

As support for exercising jurisdiction over Westar, the appellees (as plaintiffs below) pled that Westar was located in and had a registered agent in Midland, Texas; that "all of the Defendant Corporations [including Westar] have subjected themselves to the jurisdiction of this Court for purposes of this suit by reason of their conduct directed toward Texas"; that the "Corporate Defendants illegally made prohibited corporate contributions and expenditures to TRMPAC" and, therefore, "knowingly violated section 253.003 of the Texas Election Code"; and that all of the "defendants engaged in a civil conspiracy to violate the Texas Election Code." *See* Tex. Elec. Code Ann. § 253.003, .091 (West 2003). The appellees agreed on appeal that, although another company named "Westar Energy" is located in Midland, appellant Westar is in no way related to the Midland company.[1] Also, the appellees did not challenge Westar's affidavit testimony that it is incorporated in and has its principal place of business in the State of Kansas; that it has no offices, employees, directors, or officers in Texas; that it does not do business in Texas; and that it neither owns nor rents any property in Texas.

Westar urges that, because the appellees' residency pleading was incorrect and the rest of the pleadings were either conclusory or insufficient to support specific jurisdiction, this Court should hold that the appellees failed to satisfy their initial pleading burden and reverse the denial of Westar's special appearance based solely on its proof that it is a nonresident of Texas. *See Zamarron*

---

[1] The appellees originally served the Midland company but concede that the appellant has no connection with the Midland company and that the initial service in Midland was a mistake.

*v. Shinko Wire Co.*, 125 S.W.3d 132, 137 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (if "plaintiff does not plead jurisdictional allegations . . . defendant can satisfy its burden by presenting evidence that it is a nonresident").

We agree with Westar that the Texas Supreme Court has cautioned against relying on conspiracy allegations as a basis for personal jurisdiction, *National Indus. Sand Assoc. v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995), and we acknowledge that the appellees' other pleadings were slender. That said, however, we assume without deciding that the appellees satisfied their pleading burden and turn to Westar's second issue—whether the evidence was ultimately sufficient to exercise specific jurisdiction over Westar.

### *Sufficiency of Findings and Conclusions*

In denying the special appearance, if the trial court issues specific findings of fact and conclusions of law, as here, then the factual findings may be reviewed for both factual and legal sufficiency, while the conclusions of law may be reviewed for legal correctness. *BMC Software*, 83 S.W.3d at 794. Although couched in more specific terms, Westar's challenge to the trial court's findings and conclusions is essentially a claim that, based on the evidence in the record, there is no legally correct ground on which to deny Westar's special appearance.

The record demonstrates the following undisputed facts: Westar is a public utility that produces and provides energy in Kansas. In 2002, Westar was interested in influencing the outcome of a federal energy bill that was pending before Congress. Accordingly, Westar sought to meet with U.S. Congressman Tom DeLay, who represents a district in Texas. Rick Bornemann, a lobbyist in Washington, D.C. employed by Westar, arranged for two Westar executives to attend a

5

golf event in Virginia at which DeLay would be present. To pay for their attendance at the event, Westar wrote a $25,000 check, payable to TRMPAC. Westar mailed this check from its Kansas location to Bornemann's Washington address. Westar never communicated with TRMPAC or its officers and was not aware of TRMPAC's location or purpose.

The appellees urge that, even if Westar did not know that TRMPAC was a Texas political action committee, the fact that Westar knowingly contributed money to TRMPAC provides a sufficient basis for specific jurisdiction because, by writing a check to an organization without inquiring about its location, Westar opened itself up to jurisdiction wherever TRMPAC was located.[2] We do not agree that this is sufficient to constitute minimum contacts with Texas.

The Texas Supreme Court recently discussed the "touchstone" of the jurisdictional inquiry—the requirement that, in order to determine that a nonresident has established minimum contacts with a forum, there must be evidence that the defendant purposefully availed itself of the benefits and protections of the laws of the forum state. *Michiana Easy Livin' Country, Inc. v.*

_____

[2] The appellees cite *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 225 (Tex. 1991), as support for their contention that, by giving money to TRMPAC ignorant of its location, Westar "should have anticipated being haled into court in whatever forum TRMPAC was located." But the facts of *Guardian Royal* are distinct from this case. The supreme court determined there that jurisdiction was established based on a written insurance contract that the defendant, a resident of England, had entered into to provide coverage "anywhere in the world [the insured] did business." *Id.* at 231. Because the written policy expressly provided that all locations (including subsidiary locations) were covered, while expressly deleting any geographical limitations, and because the insured had two Texas subsidiaries, the supreme court determined that the defendant-insurer could reasonably anticipate being haled to Texas to litigate. *Id.* at 232. The contract in *Guardian Royal* provided evidence (1) that the nonresident had purposefully availed itself of the benefits and protections of Texas law and (2) that the nonresident could foresee being subject to jurisdiction in Texas based on that action. Such evidence is wholly lacking in the instant case.

*Holten*, 168 S.W.3d 777, 784 (Tex. 2005).[3] The Court articulated three important aspects of the purposeful availment inquiry: (1) only the defendant's contacts, not the unilateral actions of a third party, are to be considered; (2) the defendant's actions must be purposeful and not "random, isolated, or fortuitous"; and (3) "the defendant must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction" because, "by invoking the benefits and protections of a forum's laws, a nonresident [impliedly] consents to suit there." *Id*. at 785; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (discussing purposeful availment inquiry).

By all accounts, Westar's only motivation in writing the $25,000 check to TRMPAC was to influence federal legislation by meeting with a federal congressman,[4] who is afforded no vote in the Texas legislature. Even considering that DeLay may have a voice in Texas politics, the appellees did not allege or offer any evidence to show that Westar sought to influence the outcome of any Texas election or Texas legislation. For the purpose that Westar sought DeLay's audience—to gain support for Westar's position on federal legislation—DeLay could have represented any of the fifty states. And DeLay's Texas residency is not dispositive of the issue because a nonresident defendant does not establish minimum contacts with Texas simply by interacting with one of its residents outside of the state, in a manner that is unrelated to any activities within the state. Instead, the jurisdictional inquiry focuses on what contacts the defendant has

---

[3] The trial court did not have the benefit of the *Michiana Easy Livin'* opinion, as it was not released until after the trial court denied Westar's special appearance. *See* 168 S.W.3d 777 (Tex. 2005).

[4] Even the appellees characterized Westar's motivations as such: they asserted at the hearing that Westar "wanted to get to see DeLay and it cost them $25,000 to do it," and in their brief that Westar's "desire" in writing the check was "to meet with Representative Tom DeLay . . . for the purpose of lobbying [him] . . . at a golf event."

7

purposefully established with the *forum*, so as to enjoy the benefits and protections of its laws. *World-Wide Volkswagen Corp. v.Woodson*, 444 U.S. 286, 297 (1979) ("critical" fact is defendant's connection with forum); *CSR, Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996). Similarly, any evidence regarding what TRMPAC did with Westar's check is not supportive of the appellees' position because our analysis must consider only Westar's purposeful actions, not the unilateral acts of a third party. *In re S.A.V.*, 837 S.W.2d 80, 94 (Tex. 1992).

Finally, the fact that Westar wrote a check to TRMPAC, an organization with the word "Texans" in its name, also does not provide legally sufficient proof of purposeful availment by Westar because TRMPAC easily could have been located in Washington, D.C., for the purpose of achieving a Republican majority in the U.S. Congress. Businesses and organizations all across the nation use the word "Texas" in their titles for various purposes, and simply having such a word in one's title does not establish that it is actually located in the State of Texas. *See CSR, Ltd.*, 925 S.W.2d at 595 (defendant's knowledge that one "Johns-Manville" plant was located in Texas was "not determinative in establishing jurisdiction because there are also Johns-Manville plants located in at least four other states"). The appellees offered no evidence to rebut Westar's affidavit testimony that it "was not aware that TRMPAC was a Texas Political Action Committee" and "did not know the check was going to Texas." Even the dissenting judges in *Michiana Easy Livin'*, who believed jurisdiction was established, recognized that, "[c]ertainly, if a defendant did not know, or were mistaken about, where it was directing its conduct, that 'direction' could not serve as a valid basis for jurisdiction." 168 S.W.3d at 799 (Medina, J., dissenting).

8

By writing a check to TRMPAC for the purpose of meeting with a federal congressman in Virginia to lobby on federal legislation and by mailing that check from Kansas to Washington, "it is hard to imagine what possible benefits and protections [Westar] enjoyed from Texas law." *See id.* at 787.

## CONCLUSION

Given the lack of Westar's purposeful availment to Texas law, there is no basis to determine that the requisite minimum contacts exist between Westar and the State of Texas. *See id.* Therefore, Westar's special appearance should have been granted. We sustain each of Westar's issues, reverse the trial court's order, and render judgment in favor of Westar based on a lack of personal jurisdiction.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Reversed and Rendered

Filed: October 6, 2005

9