TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00414-CV






Martin Doane, Appellant


v.


Thomas F. Cooke, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. D-1-GN-05-003341, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 In this interlocutory appeal, appellant Martin Doane challenges the trial court's
overruling of his special appearance. Appellee Thomas Cooke sued Doane and two other
defendants (1) for fraud, intentional and negligent misrepresentation, and failure to disclose material
information. We affirm the trial court's order denying Doane's special appearance.


Factual Background

 Cooke is a Texas resident who was the half-owner of Austin Acquisition
Development Corp. ("AADC"); he was also its chief executive officer. Doane is a Canadian
attorney who acted as an agent for Optima Services International, Ltd. in relation to an escrow
agreement between Cooke and Optima. The underlying transaction for which the parties arranged
the escrow agreement was a stock purchase agreement under which Optima agreed to buy 500 shares
of AADC from Cooke in exchange for CND$530,000 in cash and a promissory note for
CND$1,120,000. The note was payable in two CND$560,000 installments to be paid April 1, 2005,
and July 1, 2005. To secure the note, Optima agreed to place with an escrow agent 1.4 million
common shares it owned in Trinity Plumas Capital Corp. along with a "medallion signature
guarantee" for the certificate. (2) Negotiations took about six months, and the deal was finalized in
November 2004. During negotiations, Cooke was in Texas and Optima and its agents were in
Canada. Cooke testified: 


I was not familiar with what a medallion signature guarantee . . . was. But when we
got into the negotiation relative to what was going to be necessary for me to transfer
the stock into my name, Optima said through Doane or Doane said individually or
Spence or all three of them were telling me that it was going to just drag out the
transaction too long to be able to transfer the stock certificate into my name. So
they--so we researched the--what was going to be necessary in the event that I had
to take possession of the stock to get it registered in my name through the transfer
agent . . . . And it was pointed out to us that the medallion signature guarantee was
critical to that process in the event that I did end up with that certificate.

 

 On or about November 15, 2004, the parties closed on the deal by telephone. The
transaction was comprised of four documents: a purchase agreement, a promissory note, an escrow
agreement, and a mutual release. Cooke signed the purchase agreement and the escrow agreement
in his individual capacity, and Doane signed the purchase agreement, escrow agreement, and
promissory note as vice-president and secretary of Optima. The purchase agreement, promissory
note, and escrow agreement all provided that Texas law would govern the agreements and that any
disputes arising under the agreements would be resolved in Travis County. The escrow agreement
states that under the terms of the purchase agreement, "Optima will deliver to the Escrow Agent
1.4 million shares of [Trinity Plumas] stock . . . and a fully executed blank stock power of attorney
and assignment form together with a medallion guaranty of signature . . . to be held by Escrow Agent
in accordance with the terms hereof." Cooke testified, "I would never have entered into the
agreement without a medallion signature guarantee. . . . It was a cornerstone to the agreement."

 On December 30, 2004, Spence's assistant sent the escrow agent a "transmittal letter,"
which stated that enclosed with the letter were a certificate for 1.4 million shares of Trinity Plumas
stock and a "blank stock power of attorney with medallion signature guarantee by HSBD Bank
Canada" for the shares, copying Cooke on the letter. However, the escrow agent received a signature
guarantee, not the promised medallion signature guarantee. (3) Optima defaulted, and Cooke learned
that the escrow agent had never received the medallion signature guarantee. When Cooke tried to
exercise his rights to the stock, Doane refused to provide a medallion signature guarantee. Cooke
testified that before filing this suit, he had been forced to bring two other lawsuits against the escrow
agent and the Canadian transfer agent to get the stock certificate released and transferred into his
name. Cooke asked Doane for the medallion signature guarantee before and after those suits, but
Doane refused. Cooke also testified that Doane said he would "fight the transfer agent" when Cooke
sought to have the stock transferred into his name.

 On September 15, 2005, Cook filed this suit against the Aylesworth law firm, Spence,
and Doane, suing both attorneys in their individual capacities. Cooke's petition alleged that the
defendants misrepresented to him and the escrow agent "that the escrow deposit consisted of a fully
executed blank stock power of attorney and assignment form guaranteed by a medallion signature
guarantee." Cooke alleged that the defendants committed fraud, intentional and negligent
misrepresentation, and failure to disclose material information, all related to their failure to include
the medallion signature guarantee as promised. Each defendant filed a special appearance. 

 At the hearing on the special appearances, Cooke testified that he and his agents relied
on Spence's statement in his December 30 transmittal letter that the medallion signature guarantee
had been delivered to the escrow agent. Asked what relationship Spence and Doane had to the law
firm, Cooke answered, "I believe they were [partners or associates up until November or
December 2004]. I am not sure exactly. I mean, like I said, it was kind of a moving target." He
went on to say that Doane and Spence "were wearing two hats. It was kind of hard to discern what
their roles were. In fact, Mr. Doane started off as an independent counsel and then he became an
officer and director of the--of Optima International Trust." Cooke did not know when in late 2004
Doane switched from being employed as an attorney with Aylesworth to an executive at Optima. 
From Cooke's testimony, it seems that most of his negotiations were with Spence, who prepared the
documents and stated in his December 2004 letter that the medallion signature guarantee was
included. However, Cooke also testified that he spoke to Doane during the negotiations and, when
asked whether "Doane represented to you that a medallion guarantee signature would be provided,"
Cooke answered, "Yes."

 Doane did not present evidence except for his affidavit in which he stated that he had
no contacts, had not committed any torts or entered into contracts, and did not own property or
conduct business in Texas. Doane averred, "My communications with Mr. Cooke were done in my
capacity as an attorney and/or an agent of Optima Services International, Ltd. None of my dealings
with Mr. Cooke were in my individual capacity."

 After the hearing, the trial court sustained Spence's and Aylesworth's special
appearances, dismissing Cooke's claims against those defendants. The court overruled Doane's
special appearance. Doane did not request and the court did not make findings of fact or conclusions
of law. It is from the order overruling his special appearance that Doane appeals.


Standard of Review

 A Texas court may exercise personal jurisdiction over a nonresident if exercise of
jurisdiction is authorized by the Texas long-arm statute and comports with constitutional due process
guarantees. Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990). The plaintiff has the burden
of pleading allegations sufficient to satisfy Texas's long-arm statute. BMC Software Belgium,
N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002). If the plaintiff satisfies that initial burden, the
burden then shifts to the defendant to affirmatively negate the asserted jurisdictional bases. See id. 
The long-arm statute allows a court to exercise jurisdiction over a nonresident who does
business in Texas, and committing a tort in Texas constitutes doing business in the state. Tex. Civ.
Prac. & Rem. Code Ann. § 17.042 (West 2008). The long-arm statute reaches as far as the federal
Constitution permits and, therefore, our analysis is consistent with the federal test. Guardian Royal
Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991). 

 Personal jurisdiction may arise through general jurisdiction or, as Cooke asserts,
specific jurisdiction, which requires that the defendant's acts in Texas relate to the cause of action. 
See Schlobohm, 784 S.W.2d at 358. Thus, a nonresident may be subject to specific jurisdiction in
Texas if (1) he purposefully does an act or consummates a transaction in Texas, thus establishing
minimum contacts; (2) the act or transaction is connected to or gives rise to the cause of action; and
(3) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. 
Id. Specific jurisdiction requires a substantial connection between Texas, the lawsuit, and the
defendant, and we focus not on where the injury was felt, but on the defendant's actions in Texas. 
Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 789-90 (Tex. 2005).

 We review de novo a trial court's decision on a special appearance. Marchand,
83 S.W.3d at 794. In making its jurisdictional determination, the trial court must resolve necessary
factual questions, and when a trial court does not issue findings of fact, we assume the court made
all necessary findings of fact that are supported by the evidence. Id. at 794-95. However, "[w]hen
the appellate record includes the reporter's and clerk's records, these implied findings are not
conclusive and may be challenged for legal and factual sufficiency." Id. at 795. Evidence is legally
sufficient if "there is more than a scintilla of evidence to support the finding," id., and it is factually
insufficient only if, in light of the entire record, a finding is so against the great weight and
preponderance of the evidence as to be manifestly erroneous or unjust. Ennis v. Loiseau,
164 S.W.3d 698, 706 (Tex. App.--Austin 2005, no pet.). The trial court is the sole judge of witness
credibility and the weight to be given to testimony, and we "will not disturb a trial court's resolution
of conflicting evidence that turns on the credibility or weight of the evidence." Id.


Discussion

 Cooke satisfied his initial burden, pleading sufficient allegations to come within the
Texas long-arm statute when he alleged that Doane committed fraud, misrepresentation, and failure
to disclose during his negotiations with a Texas resident. See Marchand, 83 S.W.3d at 793. His
claims are based on his allegations that Doane knowingly and falsely represented to Cooke that he
and the other defendants would provide and had provided the required medallion signature guarantee
in compliance with the various agreements. Cooke further alleged that Doane knew that Cooke
would not have entered into the agreement without a medallion signature guarantee and represented
"that the Blank Stock Power of Attorney was guaranteed by a medallion signature guarantee when
it was not." Because Cooke met his burden of making jurisdiction allegations as to all three claims,
the burden shifted to Doane to negate all asserted jurisdictional bases. 

 Because the trial court did not make findings of fact, we must assume that it made
all findings necessary to support its decision to overrule Doane's special appearance. See id. at 795.
To hold Doane amenable to jurisdiction in Texas, the trial court must have determined that he
purposefully did an act or consummated a transaction in Texas that was connected to Cooke's cause
of action and that the exercise of jurisdiction over Doane would not offend traditional notions of fair
play and substantial justice. See Schlobohm, 784 S.W.2d at 358. 

 A nonresident who acts in an official capacity on behalf of a corporation may be
subject to specific jurisdiction if he engaged in tortious or fraudulent conduct, directed at Texas, for
which he may be held personally liable. Ennis, 164 S.W.3d at 707. This is because a "corporate
officer is primarily liable for his own torts." Morris v. Powell, 150 S.W.3d 212, 221
(Tex. App.--San Antonio 2004, no pet.) (specific jurisdiction proper when plaintiff alleged
negligence, fraud, and negligent misrepresentation in corporate duties). If a corporate officer had
"direct, personal participation in the wrongdoing" and was central to the wrongful corporate activity,
he may not escape liability. Ennis, 164 S.W.3d at 707 (quoting Mozingo v. Correct Mfg. Corp.,
752 F.2d 168, 174 (5th Cir. 1985)). "It is the general rule in Texas that corporate agents are
individually liable for fraudulent or tortious acts committed while in the service of their corporation,"
Shapolsky v. Brewton, 56 S.W.3d 120, 133 (Tex. App.--Houston [14th Dist.] 2001, pet. denied), and
a corporate officer need not have committed an intentional tort to be haled into Texas courts. Ennis,
164 S.W.3d at 708. Instead, the plaintiff "must establish that the officer committed fraudulent or
tortious acts for which he may be held individually liable." Id. In other words, a corporate officer's
"status as [an] employee[] does not somehow insulate [him] from jurisdiction," Calder v. Jones,
465 U.S. 783, 790 (1984), and will not grant him "blanket protection from jurisdiction simply
because [his] alleged acts were done in a corporate capacity," SITQ E.U., Inc. v. Reata Rests., Inc.,
111 S.W.3d 638, 651 (Tex. App.--Fort Worth 2003, pet. denied).

 We are not asked to determine whether Doane will ultimately be held liable on
Cooke's claims. Our inquiry is whether Cooke "sufficiently established facts suggesting that
[Doane] should have anticipated being haled into a Texas court based on his actions." See Ennis,
164 S.W.3d at 708-09. "Hence, if the evidence suggests that the nonresident officer participated in
tortious or fraudulent activities, which were directed at Texas and for which he may be held
personally liable," there may be sufficient grounds to exercise specific jurisdiction over him. 
See id. at 709. 

 Cooke alleged and testified that Doane, along with others, participated in negotiations
with Cooke, a Texas resident, over about six months, arranging for Cooke to sell shares in a
Texas corporation to Optima, a foreign corporation, in exchange for certain sums. Cooke alleged
and testified that Doane himself promised that Optima's payments would be secured by a certificate
for 1.4 million Trinity Plumas shares and that Optima would provide a medallion signature guarantee
to ease the stock transfer in the event of Optima's default. Cooke testified that he would not have
agreed to the transaction but for the promised medallion signature guarantee and that Doane later
refused repeated requests for the guarantee and told Cooke that he would fight the transfer of the
stock into Cooke's name. Doane signed documents that stated that the medallion signature guarantee
would be attached to the stock certificate, and those documents included clauses subjecting the
agreement and any disputes to Texas law and venue in Travis County. The actions of which Cooke
complains--Doane's alleged misrepresentations that the medallion signature guarantee would be
provided to the escrow agent along with the stock certificate--were certainly directed at Texas and
connected to Cooke's causes of action, all of which rely on alleged misrepresentations that the
medallion signature guarantee would be provided. (4) See id. at 708-09. Further, if Cooke's testimony
is credible, as the trial court impliedly found by its denial of Doane's special appearance, Doane's
conduct was tortious and fraudulent, and he could be held personally liable for that conduct despite
it having been done in his official capacity. (5) 

 We recognize that the supreme court has placed limits on the exercise of jurisdiction
when an actor "directs" a tort at Texas and that it has held that the commission of a "tort in a
telephone call" to Texas does not "necessarily establish[]" specific jurisdiction. See Michiana Easy
Livin' Country, 168 S.W.3d at 789-92 (noting that court had "expressly rejected jurisdiction 'based
solely upon the effects or consequences of an alleged conspiracy'" in Texas) (quoting
National Indus. Sand Ass'n v. Gibson, 897 S.W.2d 769, 773 (Tex. 1995)). However, the acts of
which Cooke complains--Doane's alleged misrepresentations related to the inclusion of a medallion
signature guarantee--were repeated, directed at Texas, and made in the course of buying shares in
a Texas company owned by at least one Texas citizen, a contract which the parties agreed would be
controlled by Texas law. See id. at 789-90 (important factors are extent of defendant's activities and
relationship of defendant, forum state, and litigation). We have considered the extent of Doane's
alleged misdeeds, the nature of those acts, and the contractual relationship established with Texas,
as well as the pleadings, Doane's special appearance arguments, and Cooke's testimony. We hold
that the trial court did not err in determining that Doane purposefully directed sufficient actions at
Texas through his negotiations with and representations to Cooke, that there is a nexus between
Doane's alleged actions and Cooke's causes of action, and that the trial court's exercise of
jurisdiction over Doane would not offend traditional notions of fair play and substantial justice. (6) See
Schlobohm, 784 S.W.2d at 358. 


Conclusion

 No matter whether Doane is ultimately held liable for his alleged conduct, Cooke's
testimony and evidence at the special-appearance hearing suggests that Doane knowingly or, at the
least, negligently misled Cooke into believing that Optima would provide and was providing Cooke
with a medallion signature guarantee, which Cooke considered to be an essential part of the
transaction. We therefore overrule Doane's sole point of error and affirm the trial court's order
denying Doane's special appearance. 

 __________________________________________

 David Puryear, Justice

Before Chief Justice Law and Justices Puryear and Henson

Affirmed

Filed: November 14, 2008
1. Cooke also sued James Spence, another Canadian lawyer involved in the negotiations, and
Aylesworth L.L.P., a Canadian law firm. The trial court granted special appearances filed by Spence
and Aylesworth, and this appeal concerns only the court's overruling of Doane's special appearance.
2. A medallion signature guarantee is a signature guarantee issued by a financial institution
that participates in one of three "Medallion signature guarantee programs." A participating financial
institution guarantees a customer's signature "with the assurance that their guarantees will be
immediately accepted for processing by transfer agents." Signature guarantees issued by non-medallion institutions may be refused by transfer agents. United States Securities & Exchange
Commission, Signature Guarantees: Preventing the Unauthorized Transfer of Securities, available
at http://www.sec.gov/answers/sigguar.htm.
3. Attached to the stock certificate and sent with Spence's December 30 letter is a document
signed by Doane as vice-president and secretary of Optima that recites that "the undersigned hereby
sells, assigns and transfers" 1.4 million shares of Trinity Plumas stock. 
4. Fraud is the false representation of a material fact, made intentionally or recklessly by the
defendant, intended to be and actually relied on by the plaintiff to his detriment. Formosa Plastics
Corp. USA v. Presidio Engrs. & Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998). "A promise of
future performance constitutes an actionable misrepresentation if the promise was made with no
intention of performing at the time it was made." Id. at 48. Negligent misrepresentation occurs if
in the course of business in which he has a pecuniary interest, a defendant gives false information
for a plaintiff's guidance, without exercising reasonable care or competence in obtaining or
providing the information, on which the plaintiff justifiably relies and suffers a resulting pecuniary
loss. Federal Land Bank Ass'n v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991). Finally, fraudulent
nondisclosure occurs when the defendant fails to disclose a fact he knows may justifiably induce the
plaintiff to act in a business transaction if he owed the plaintiff a duty of reasonable care. See
Ralston Purina Co. v. McKendrick, 850 S.W.2d 629, 633-36 (Tex. App.--San Antonio 1993,
writ denied).
5. Doane's affidavit states that he is a Canadian attorney; he has not entered into any contracts
or committed any torts in Texas; he has conducted no business, has no contacts, and owns no
property in Texas; and all of his communications with Cooke were in his role as attorney or agent
for Optima, not his individual capacity. His statements about his contacts with Cooke and that he
had not committed a tort in Texas do not refer to supporting facts or discuss what knowledge or
intent he had about the medallion guarantee when he made the various representations. The affidavit
provides no factual support for his statements about his contacts with Cooke or that he had not
committed a tort. Instead, it merely states Doane's legal conclusions about the capacity in which he
acted and that his acts not tortious in nature. Those bare averments are conclusory and not
competent affidavit evidence. See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.,
136 S.W.3d 227, 232 (Tex. 2004); Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984); FNFS,
Ltd. v. Security St. Bank & Trust, 63 S.W.3d 546, 550 (Tex. App.--Austin 2001, pet. denied);
Domel v. City of Georgetown, 6 S.W.3d 349, 355-56 (Tex. App.--Austin 1999, pet. denied).
6. A nonresident seeking to avoid jurisdiction in Texas must present a "compelling case" to
explain why litigation in Texas would be unduly burdensome. Burger King Corp. v. Rudzewicz,
471 U.S. 462, 477 (1985). Doane's affidavit states only that "[r]equiring me to defend an action in
Texas would be a huge burden and cost."