ACCEPTED
01-14-00892-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/13/2015 4:15:35 PM
CHRISTOPHER PRINE
CLERK

No. 01-14-00892-CV

In the Court of Appeals
for the First Judicial District
Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

4/13/2015 4:15:35 PM

CHRISTOPHER A. PRINE
Clerk

ADELAIDA SALAZAR BAUTISTA A/K/A ADELAIDA ALVARADO,
INDIVIDUALLY AND AS NEXT FRIEND OF MARIA JENNIFER AIDE
A/K/A MARIA JENNIFER ALVARADO, A. A., A. A., I. S. A., M. A., AND E.
A., MINORS; AND IRINEO ALVARADO AND MARIA ANA MOCTEZUMA,

Appellants,

v.

TRINIDAD DRILLING LIMITED,

Appellee.

On Appeal from the
270th Judicial District Court of Harris County

## **REPLY BRIEF OF APPELLANTS**

Respectfully submitted,

By   */s/ Geoffrey E. Schorr*

Geoffrey E. Schorr
geoff@schorrfirm.com
Texas Bar No. 24029828
A. Jared Aldinger
Texas Bar No. 24068456
jared@schorrfirm.com
SCHORR LAW FIRM, PC

328 W. Interstate 30, Suite 2
Garland, TX 75043
Tel. (972) 226-8860
Fax (972) 226-9787

Hutton W. Sentell
Texas Bar No. 24026655
hsentell@ashmorelaw.com
ASHMORE LAW FIRM, P.C.
3636 Maple Ave.
Dallas, TX 75219
Tel. (214) 559-7202
Fax (214) 520-1550

Andrew P. McCormick
Texas Bar No. 3457100
amccormick@mlm-lawfirm.com
McCORMICK, LANZA & McNEEL, LLP
4950 Bissonnet Street
Bellaire, TX 77401
Tel. (713) 523-0400
Fax (713) 523-0408
ATTORNEYS FOR
PLAINTIFFS/APPELLANTS ADELAIDA
SALAZAR BAUTISTA a/k/a  ADELAIDA
ALVARADO, Individually, and as next
friend of MARIA JENNIFER AIDE a/k/a
MARIA JENNIFER ALVARADO, A. A.,
A. A., I. S. A., M. A., and E. A.,, Minors

And

By: */s/ Justin K. Hall*
    Justin K. Hall
    Texas Bar No. 90001828
    jkhall@justinkhall.com
    328 W Interstate 30, Suite 2
    Garland, Texas  75043
    Tel. (972) 226-1999
    Fax  (972) 226-2221

Attorney for Plaintiffs, Irineo Alvarado and
Maria Ana Moctezuma

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**BRIEF**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**1**

*I.*      *Summary of Argument*..................................................................*1*

*II.*     *This action is not based on imputed liability or jurisdictional contacts, and alter-ego or other veil-piercing theories are not at issue.* ..............*3*

*III.*    *This Court should apply a de novo review to factual issues, with inferences drawn in favor of jurisdiction*...............................................*5*

*IV.*    *Trinidad Limited is subject to specific jurisdiction based on its own acts.* ........................................................................................*9*

      A.    Plaintiffs claims are not based on veil piercing; Trinidad Limited is subject to jurisdiction for its own contacts with drilling operations in Texas. .......................................................................................*11*

      B.    Michiana supports jurisdiction in this case.............................................*11*

      C.    Trinidad Limited has not controverted Plaintiffs' allegations and evidence of jurisdiction.......................................................................*15*

*V.*      *Trinidad Limited is also subject to general jurisdiction based on its own acts.* ........................................................................................*16*

*VI.*    *Prayer*....................................................................................*20*

**CERTIFICATE OF SERVICE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**

**CERTIFICATE OF COMPLIANCE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**

# INDEX OF AUTHORITIES

**Texas cases**                                                                      **Page(s)**

*Arvizu v. Estate of Puckett*, 364 S.W.3d 273 (Tex.2012) ............... 18

*Certified EMS, Inc. v. Potts,* 392 S.W.3d 625 (Tex. 2013) ........... 4

*Franka v. Velasquez*, 332 S.W.3d 367 (Tex. 2011) .................. 18

*Fung v. Fischer*, 365 S.W.3d 507 (Tex. App.—Austin 2012) ....... 4

*Gilcrease v. Garlock, Inc.*, 211 S.W.3d 448
     (Tex. App.—El Paso 2006, no pet.). ................... 8

*Glattly v. CMS Viron Corp.,* 177 S.W.3d 438
     (Tex. App.—Houston [1 Dist.] 2005, no pet.) .................. 19

*Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721
     (Tex. App.—Houston [14 Dist.] 2008, no. pet.) ................. 4

*IHS Cedars Treatment Center of DeSoto, Texas, Inc. v.
     Mason,*143 S.W.3d 794 (Tex. 2003) ................. 4

*Kelly v. Gen. Interior Constr., Inc.*,
     301 S.W.3d 653 (Tex. 2010) ................. 8

*Mackey v. Midland-Odessa Transit*, No. 11–13–00083–CV,
     2015 WL 1501466 (Tex. App.—Eastland March 31,
     2015, no. pet. h.) ................. 7

*Michiana Easy Livin' Country, Inc. v. Holten*,
     168 S.W.3d 777 (Tex. 2005) ................. 12, 13

*Moncrief Oil Int'l Inc. v. OAO Gazprom,*
     414 S.W.3d 142 (Tex. 2013) ................. 9

*Nat'l Indus. Sand Ass'n v. Gibson,*
     897 S.W.2d 769 (Tex. 1995) ................. 5, 8

*Otis Elevator Co. v. Parmelee*, 850 S.W.2d 179 (Tex. 1993) ....... 6, 7

*RSR Corp. v. Siegmund,* 309 S.W.3d 686
(Tex. App.—Dallas 2010, no pet.) 17

*Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211 (Tex. 2002) 7

*Texas Department of Parks & Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004) 7

***Federal cases***

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985) 10

*Calder v. Jones*, 465 U.S. 783 (1984) 13, 14, 15

*Doe v. Catholic Soc. of Religious and Literary Educ.*,
2010 WL 345926 (S.D. Tex. 2010) 4

*Guidry v. U.S. Tobacco Co., Inc.,*
188 F.3d 619 (5th Cir. 1999) 7

*Helicopteros Nationales de Columbia,S.A. v. Hall,*
466 U.S. 408 (1984) 10, 13

*Shaffer v. Heitner*, 433 U.S. 186, 204 (1977) 13

*Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*,
2008 WL 686206 (S.D. Tex. 2008) 4

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980) 10

*Internat'l Shoe v. Washington*, 326 U.S. 310 (1945) 19

No. 01-14-00892-CV

In the Court of Appeals
for the First Judicial District
Houston, Texas

---

ADELAIDA SALAZAR BAUTISTA A/K/A ADELAIDA ALVARADO,
INDIVIDUALLY AND AS NEXT FRIEND OF MARIA JENNIFER AIDE
A/K/A MARIA JENNIFER ALVARADO, A. A., A. A., I. S. A., M. A., AND E.
A., MINORS; AND IRINEO ALVARADO AND MARIA ANA MOCTEZUMA,

Appellants,

v.

TRINIDAD DRILLING LIMITED,

Appellee.

---

On Appeal from the
270th Judicial District Court of Harris County

---

## REPLY BRIEF OF APPELLANTS

---

## I.    <u>**Summary of Argument**</u>

In their opening brief, Plaintiffs/Appellants ("Plaintiffs") raised three issues.

First, Plaintiffs addressed the standard of review.  More specifically, Plaintiffs

demonstrated that a proper reading of Texas Supreme Court precedent indicates

that this Court should apply a de novo review to both facts and law, with any

conflicts in the evidence resolved in favor of jurisdiction. *See* Appellants' Brief at 10-13.

Next, Plaintiffs demonstrated that Trinidad Drilling Ltd. ("Trinidad Limited") is subject to specific jurisdiction in this case, regardless of the standard of review to be applied. More specifically, Plaintiffs demonstrated that the undisputed allegations and the great weight and preponderance of evidence show that Trinidad Limited purposefully availed itself of Texas law—by controlling, setting policies for, and taking responsibility for aspects of drilling operations *in Texas*—and that Plaintiffs claims arise from such contacts with Texas. *See* Appellants' Brief at 13-30.

Finally, Plaintiffs demonstrated that Trinidad Limited maintains continuous and systematic contacts with Texas—including the continuous physical presence of a high-level manager maintaining an office in Houston—such that it should feel at home in the state. As such, Trinidad Limited is also subject to general jurisdiction. *See* Appellants' Brief at 30-33.

Trinidad Limited responds primarily by mischaracterizing Plaintiffs' arguments. Most prominently, Trinidad Limited argues that Plaintiffs are attempting to base jurisdiction on contacts of a subsidiary, and that Plaintiffs therefore must establish that the two companies are alter egos of each other. To the contrary, Plaintiffs' allegations and arguments make clear that neither liability

nor jurisdiction is based on any imputed acts of a subsidiary. Rather, both liability and jurisdiction are based on Trinidad Limited's own acts—*i.e.,* its own participation in drilling *operations in Texas*—and those acts are attributable to Trinidad Limited regardless of whether the drilling itself is conducted by Trinidad Limited's own employees, its subsidiary's employees (as in this case), or employees of an unaffiliated company.

Because of the pervasiveness of the alter-ego argument in Trinidad Limited's response, it is separately addressed in Section II below. The remainder of Trinidad Limited's arguments are addressed, as appropriate, in Section III (legal standards), Section IV (specific jurisdiction), and Section V (general jurisdiction).

## II. **This action is not based on imputed liability or imputed jurisdictional contacts, and alter-ego or other veil-piercing theories are not at issue.**

Trinidad Limited attempts to confuse the issues by asserting that Plaintiffs' claims are based on veil-piercing and that Plaintiffs must establish that Trinidad Limited is the alter ego of its subsidiary in order to maintain jurisdiction. However, this argument is nothing but a red herring. The allegations of the Third Amended Complaint make clear that Plaintiffs do not seek to hold Trinidad Limited liable (or subject to jurisdiction) for any imputed acts of its subsidiary. Instead, Plaintiffs allege that Trinidad Limited is liable (and subject to jurisdiction) for its own participation in drilling activities in Texas.

There is no mystery in this type of claim. This Court is well aware that an entity may be *vicariously* liable for the acts of another person or entity (under theories such as respondeat superior, alter ego, etc.) and separately liable for its *own acts*, such as negligently creating or implementing *policies*. *See, e.g., IHS Cedars Treatment Center of DeSoto, Texas, Inc. v. Mason,* 143 S.W.3d 794, 802 (Tex. 2003); *Fung v. Fischer*, 365 S.W.3d 507, 522-26 (Tex. App.—Austin 2012), *disapproved on other grounds by Certified EMS, Inc. v. Potts,* 392 S.W.3d 625, 626-27 (Tex. 2013); *Doe v. Catholic Soc. of Religious and Literary Educ.*, 2010 WL 345926, *1 (S.D. Tex. 2010).

The same principle is equally true in the context of jurisdiction. *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 2008 WL 686206, *8 (S.D. Tex. 2008) (separately addressing imputation of contacts and direct contacts); *Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721, 730 (Tex. App.—Houston [14 Dist.] 2008, no. pet.).

In this case, Plaintiffs do not attempt to impute any contacts of the subsidiary company to Trinidad Limited; rather, they contend that Trinidad Limited is subject to jurisdiction based on its own contacts, such as setting policies for drilling operations *in Texas*, exercising control over drilling operations *in Texas*, and maintaining the physical presence of a high-level manager *in Texas*. Such contacts do not depend in the slightest on whether Trinidad Limited controls

the internal affairs of its subsidiaries, intermingles funds, etc.; rather, they exist independently of such issues. In fact, Trinidad Limited's contacts would apply with equal force if the other entities involved in the drilling operations were unaffiliated with Trinidad Limited's ownership. Thus, the question before the Court does not involve the relationship between Trinidad Limited and its subsidiary, but rather between Trinidad Limited and its operations in Texas.

## III. This Court should apply a *de novo* review to factual issues, with inferences drawn in favor of jurisdiction.

In section IV of their opening brief, Plaintiffs pointed out that various Texas courts had routinely applied a standard of review—requiring the appellate court to imply findings in support of the judgment if adequately supported by evidence—without regard to the context in which it was created. Plaintiffs further pointed out that this standard does not logically apply to cases *declining jurisdiction* based on "cold records," since the application to this type of situation is contrary to the underlying principles of Texas law (*e.g.,* placing the burden on defendant of negating "all bases of jurisdiction"). *Nat'l Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 772 (Tex. 1995).

In this case, Trinidad Limited does not contend that the Court is bound by prior precedent to apply the commonly-cited standard. Instead, it argues only that: (1) the issue is irrelevant; and (2) Plaintiffs' suggested standard is inconsistent with

the fact that Rule 120a allows a special appearance to be decided on a paper record.

The former argument is partially correct. The Court can decide this appeal without reaching this issue, but only if it reverses the trial court. In other words, the Court can find that jurisdiction exists based on the undisputed allegations and evidence. However, it cannot affirm the trial court without resolving conflicts in the evidence.

The latter argument—that a paper record inherently requires deference to the trial court's decision—simply is illogical. There is no reason why a deferential standard of review should apply to issues decided on a paper record, and such a standard is not applied to the bulk of paper-record motions. As the Texas Supreme Court has explained, "[u]nder these circumstances"—where the trial court bases its decision solely "on the papers filed and the argument of counsel"—"there are no factual resolutions to presume in the trial court's favor." *Otis Elevator Co. v. Parmelee*, 850 S.W.2d 179, 181 (Tex. 1993).

Instead, the standard of review applicable to a particular type of motion is based on whatever fundamental principles are applicable to that type of motion. *See, e.g., id.* (applying standards appropriate for motion for sanctions). For instance, motions for summary judgment are based on a de novo review, with all conflicts in evidence resolved *against the movant*, in accordance with the

underlying presumptions for summary judgment. *See, e.g., Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). The same is true in the context of subject matter jurisdiction: "When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court considers relevant evidence submitted by the parties to resolve the jurisdictional issues raised," and the "appellate court does the same." *Mackey v. Midland-Odessa Transit*, No. 11–13–00083–CV, 2015 WL 1501466, *1 (Tex. App.—Eastland March 31, 2015, no. pet. h.) (citing *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004)). Thus, the appellate court will uphold jurisdiction (regardless of the trial court's decision) if the evidence at least raises a fact question on the existence of jurisdiction. *See, e.g., id.* (citing *Miranda*, 133 S.W.3d at 228). Likewise, federal courts apply a similar standard in the context of personal jurisdiction—the issue in this case. Specifically, appellate courts resolve all conflicts in the evidence *in favor of* personal jurisdiction. *See, e.g., Guidry v. U.S. Tobacco Co., Inc.,* 188 F.3d 619, 625 (5th Cir. 1999*)* ("accept[ing] as true *the nonmover's allegations* and resolv[ing] all factual disputes in its favor"). In each case, the evidentiary presumptions are made in accordance with the fundamental policies involved, rather than blind deference to the trial court, since a paper record involves "no factual resolutions to presume in the trial court's favor." *Otis Elevator Co. v. Parmelee*, 850 S.W.2d 179, 181 (Tex. 1993).

Indeed, this principle is true even in those rare cases where Texas law has applied an extremely deferential standard to the trial court based on paper records. Most obvious is the issue of venue. In cases involving a motion to transfer venue, the issue is almost always appealed after a final judgment. Thus, policies such as preserving finality of judgment and judicial efficiency (by avoiding multiple trials) justify an extraordinary deference to the venue decision, *i.e.*, by searching the entire record to determine if any probative evidence supports the final venue. *See, e.g., Gilcrease v. Garlock, Inc*., 211 S.W.3d 448, 459 (Tex. App.—El Paso 2006, no pet.).  Likewise, in the personal jurisdiction context, the commonly cited standard can be justified when a special appearance is *denied, i.e.*, when a court finds jurisdiction exists. *See, e.g., Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). This is so because Texas applies an extraordinarily high burden on a party challenging jurisdiction—requiring the defendant to "negate all bases of jurisdiction"—and it is therefore appropriate for an appellate court to affirm an order *maintaining* jurisdiction whenever there are disputed facts that could justify such a ruling. *Nat'l Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 772 (Tex. 1995).

In contrast, there is no logical reason for applying such a standard when the trial court *declines* jurisdiction. In such cases, the appellate court should conduct a de novo review, with all conflicts in the evidence resolved *in favor* of jurisdiction,

in accordance with the underlying principle that the defendant bears a heavy burden to negate jurisdiction.[1] *See id.* Moreover, principles of judicial efficiency counsel in favor of a presumption *in favor of* jurisdiction, as the denial of jurisdiction will require an entirely new case in a new forum and in many cases (such as this one) will require duplication of lawsuits. As such, it is appropriate to apply a de novo review, with all conflicts resolved in favor of jurisdiction, rather than conflicts being resolved in favor of the trial court's decision.

In any event, appellate courts always apply a de novo review to issues of law, and the undisputed facts and evidence are sufficient to reverse the trial court, for the reasons discussed below. *See, e.g., Moncrief Oil Int'l Inc. v. OAO Gazprom,* 414 S.W.3d 142, 150 n.4 (Tex. 2013) (reversing trial court without deciding the standard of review, because the record justified reversal under any standard).

## IV. **Trinidad Limited is subject to specific jurisdiction based on its own acts.**

In section V of their opening brief, Plaintiffs demonstrated that the uncontroverted allegations and evidence are sufficient to subject Trinidad Limited

---

[1] As noted in the opening brief, numerous Texas courts have criticized the commonly-used standard, but nevertheless believed that the standard was mandated by Texas Supreme Court precedent. To the contrary, Plaintiffs are unaware of any Texas Supreme Court case that has issued a holding on this issue, and Trinidad Limited cites none. Instead, it appears the Texas Supreme Court's references to this standard are all dicta, as they all: (1) involved a decision based on live evidence, to which trial-court deference is ordinarily appropriate; (2) involved trial-court decisions to maintain jurisdiction; or (3) mentioned the standard without applying it, because the relevant facts were undisputed. In any event, the Texas Supreme Court has now confirmed that it has now decided the issue, and has left its resolution for another day. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 n.4 (Tex. 2013).

to specific jurisdiction. Specific jurisdiction is established by showing that: (1) the defendant has "minimum contacts" with the forum state; and (2) the lawsuit "arises from" or relates to the defendant's contact with the forum state. *Helicopteros Nationales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984). In this context, the "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State," such that the defendant "should reasonably anticipate being haled into court" in the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 287 (1980).

In this case, Plaintiffs satisfied these factors by demonstrating that uncontroverted allegations and evidence are sufficient to show:

- That Plaintiffs' claims "arise from" allegations that Trinidad Limited set policies for, and exercised control over, the safety aspect of drilling operations; *see* Appellants' Brief at 14-16;

- That Trinidad Limited did set policies for, and exercise control over, the safety aspect of drilling operations, *see* Appellants' Brief at 16-24;

- That Trinidad Limited knew that, intended that, and took actions to ensure that its policies and control would govern such operations *in the state of Texas, see* Appellants' Brief at 24-27.

In response, Trinidad Limited does not directly address these arguments. Instead, it attempts to confuse the issues by addressing straw-men arguments.

> **A.** ***Plaintiffs' claims are not based on veil piercing; Trinidad Limited is subject to jurisdiction for its own contacts with drilling operations in Texas.***

In section I(A)(1) of its response brief, Trinidad Limited mischaracterizes Plaintiffs claim as one based on veil piercing and therefore asserts that Plaintiffs have the burden to show "the parent controls the internal business operations and affairs of the subsidiary," etc. However, as discussed in section II above, that is not the case. Plaintiffs do not assert liability or jurisdiction based on any improper corporate relationship with Trinidad Limited's subsidiary. Rather, liability and jurisdiction are based on allegations and evidence that Trinidad Limited itself directly set policies and exercised control over particular *activities* in Texas. Trinidad Limited's participation in such activities constitutes direct contact with Texas, regardless of whether the policies were ultimately executed by its own employees, a subsidiary's employees, or an unaffiliated entity's employees. This issue has been addressed in more detail in section II above.

> **B.** ***Michiana* supports jurisdiction in this case.**

In section I(A)(2) of its response brief, Trinidad Limited mischaracterizes Plaintiff's arguments as asserting that it is subject to jurisdiction solely because the "effects" of Trinidad Limited's negligence were "felt in Texas" or because its

negligence "cause[d] an injury in Texas." By virtue of this mischaracterization, Trinidad Limited asserts that Plaintiff's arguments are barred by *Michiana.* However, nothing could be further from the truth. To the contrary, *Michiana*'s analysis fully supports the exercise of jurisdiction in this case.

*Michiana* dealt with a contract between a mobile-home purchaser in Texas and a mobile-home seller in Indiana. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). The contract resulted from an unsolicited phone call initiated from Texas by the purchaser, and the seller had no other contacts with Texas. *Id.* The purchaser sued the seller for breach of contract and for misrepresentation.

Under these circumstances, the Texas Supreme Court held that the seller was not subject to jurisdiction in Texas. In doing so, the Texas Supreme Court disapproved of prior decisions holding that a single phone call, without more, would establish jurisdiction in Texas. *Id.* at 791-92. However, *Michiana* did not otherwise alter existing law. Instead, the Texas Supreme Court (as it had to do) acknowledged prior United States Supreme Court precedent holding that jurisdiction could be based on a tort's "effects" in a forum state in certain circumstances. The significance of *Michiana* is simply that it construed the United State Supreme Court as holding that jurisdiction could not be based *solely* on the "effects" or "brunt" of harm on the plaintiff, as such a standard would make

jurisdiction turn on the location of the plaintiff. *See, e.g., id.* at 789-92. But this is not a new principle, as the United States Supreme Court has emphasized that the jurisdictional analysis is based on the relationship between the defendant, the forum state, and the litigation. *E.g., Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, (1984) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

As is readily apparent, *Michiana* does not adversely affect Plaintiffs' case in the slightest, as Plaintiffs do *not* assert jurisdiction simply because the "effects" of Trinidad Limited's torts were felt in Texas. Instead, this case falls squarely within principles of *Calder v. Jones* and similar cases, as construed in *Michiana*. In *Calder,* the plaintiff's claims of a plaintiff in California "arose from" allegations that a writer and editor made a defamatory article about the plaintiff. *Id.* at 789 (citing *Calder v. Jones*, 465 U.S. 783, 785 n.2 (1984)). The writer and editor did not themselves take any action in California, but they were aware that their employer would widely publish the article in California, and that the effects of the article would be felt there. *Id.* (citing *Calder*, 465 U.S. at 785 n.2 (1984)). The United States Supreme Court therefore held that the writer and editor were subject to jurisdiction in California because they had "directed" a tort to California. *Id.* (citing *Calder v. Jones*, 465 U.S. 783, 785 n.2 (1984). As characterized by the Texas Supreme Court, the significance of *Calder v. Jones* does not depend on

whether a tort was committed, but rather simply that the writer and editor knew and intended that a third-party (their employer) would extensively publish the article in California. *Id.* Thus, under the Texas Supreme Court's characterization of *Calder*, a tort directed to Texas will support jurisdiction so long as "the defendant's conduct and connection with the forum" play a critical role. *Id.* at 789.

Here the uncontroverted allegations and evidence show that "[Trinidad Limited]'s conduct and connection with [Texas] play a critical role." *See Id.* at 789. Plaintiffs' claims "arise from" allegations that Trinidad Limited (the parent company) set safety policies for drilling operations, exercised control over drilling operation, etc. *See* Appellants' Brief at 14-16. The uncontroverted allegations and evidence then demonstrate that it knew and intended that its policies would govern both personnel and property related to drilling activities *in Texas. See* Appellants' Brief at 16-27. As such, its policies necessarily availed itself of *Texas law*, since the laws of Texas would govern the propriety of such operations. Moreover, Trinidad Limited took affirmative action to ensure that its policies would be carried out *in Texas*. Indeed, the facts in this case go well beyond the facts of *Calder*, since the implementation of these policies was partially done by Trinidad Limited's own employees while *physically located within the boundaries of Texas*. The fact that the policies themselves were ultimately carried out by employees of another entity (its subsidiary) makes no difference, just as it made no difference in

*Calder* that the defamatory statements were shipped to California by another entity (the employer). Trinidad Limited has purposefully availed itself of Texas law, and this action arises from Trinidad Limited's own contacts with Texas.

### C. Trinidad Limited has not controverted Plaintiffs' allegations and evidence of jurisdiction.

Finally, in section I(B) and I(C) of its response brief, Trinidad Limited asserts that it has controverted Plaintiffs' allegations and evidence. However, it has done nothing of the kind. As to the allegations, Trinidad Limited simply repeats its arguments regarding veil piercing, which are discussed at length above. As explained in Plaintiffs' opening brief, Trinidad Limited has not controverted Plaintiffs' allegations, such as:

- "At all relevant times" Trinidad Limited "exercised . . . control and took responsibility for overseeing safety policies and procedures for the crews on the drilling rigs."

C.R.38 ¶ 4.07. Indeed, Trinidad Limited produces no evidence regarding the "relevant time period" whatsoever.

As to the evidence, Plaintiffs anticipated and addressed Trinidad Limited's argument in their opening brief. *See* Appellants' Brief at 16-27. For instance, as to the "remedial measures," Plaintiffs' demonstrated that Mr. Foreman (whatever his other roles) was acting as an agent of Trinidad Limited (the parent company) and that he was not simply reporting on an investigation. *See* Appellants' Brief at 18-21. To the contrary, his own memo shows that he participated directly in

setting and implementing remedial policies in connection with operations in Texas, the rest of America, and Canada. *See* C.R.79-80. Although such remedial measures cannot be used to show negligence, they are affirmative evidence of "control" at the time of the accident. *See* Tex. R. Evid. 407. Likewise, the remaining evidence demonstrates that Trinidad Limited controlled and set policies for *operations* exactly as explained in the opening brief.

More importantly, Trinidad Limited does not even address the most significant allegations and evidence cited in the opening brief—the allegations and evidence that Trinidad Limited intended, and took steps to ensure, that its policies would be carried out *in Texas.* This issue is fully addressed in Plaintiffs' opening brief, which demonstrated that Trinidad Limited is subject to specific jurisdiction for its *own* acts. *See* Appellants' Brief at 24-27.

## V. Trinidad Limited is also subject to general jurisdiction based on its own acts.

Finally, in section VI of their opening brief, Plaintiffs demonstrated that Trinidad Limited is also subject to general jurisdiction in Texas, most notably by a high-level manager maintaining an office in Texas. Although general jurisdiction does not *require* physical presence in the state, the physical presence of an agent or office is *sufficient* to create general jurisdiction if the agent's role is "central" to the defendant's business. *See, e.g., RSR Corp. v. Siegmund,* 309 S.W.3d 686, 708 (Tex. App.—Dallas 2010, no pet.).

In this case, the *undisputed* evidence demonstrates that Rodney Foreman acts as the "General Manager of Corporate HSE" for "Trinidad Drilling Ltd." (the parent company) and that he maintains an office in the Houston area. *See* Appellants' Brief at 31-32 *(citing, e.g.,* C.R.79-80, 90-91; Supp.C.R.313). Thus, there is no question that Trinidad Limited maintains a "physical presence" in Texas.

Likewise, there is no dispute that this Texas presence is central to the business of Trinidad Limited. This fact is apparent from Mr. Foreman's title with the parent company. Mr. Foreman is not a low-level representative; instead, he is fairly-obviously a high-level officer: *"General Manager* of *Corporate* [Health, Safety, and Environment]" for "Trinidad Drilling Ltd." Moreover, this is confirmed by the other undisputed evidence in the record. Mr. Foreman reports directly to the executive officers of Trinidad Limited (the parent company), rather than to intermediate managers or to officers of any subsidiary. C.R.75-76, C.R.90-91, Supp. C.R.329. He participates directly in the creation and implementation of safety policies for all the drilling operations in the United States and Canada. *See, e.g.* C.R. 79-80. Indeed, Trinidad Limited (the parent company) has expressly cited Mr. Foreman as its spokesman for safety issues in communications with its investors. Supp. C.R.313.

In response, Trinidad Limited asserts that "Rodney Foreman is not employed by Trinidad Ltd.; he is employed by Trinidad L.P." Appellee's Brief at 18-19. However, this assertion is both a misstatement of evidence and an irrelevant statement.

First, this statement mischaracterizes the record, which is devoid of any evidence that Mr. Foreman is not an employee of the parent company. To the contrary, the only evidence is that Mr. Foreman is "paid by" the subsidiary. *See* Supp. C.R.357. However, payment by the subsidiary does not determine whether Mr. Foreman is *also* an employee of the parent, Trinidad Limited. *See, e.g., Franka v. Velasquez*, 332 S.W.3d 367, 373 (Tex. 2011) (noting that, under three-party residency arrangement, resident was paid by one entity but under the legal right of control of another entity); *cf. Arvizu v. Estate of Puckett*, 364 S.W.3d 273, 276–77 (Tex.2012) (holding that multiple entities were liable for acts of employee).

As this Court is well aware, a person can wear multiple "hats" for multiple entities. *See e.g., Glattly v. CMS Viron Corp.,* 177 S.W.3d 438, 442 (Tex. App.—Houston [1st Dist.] 2005, no pet.). In each case, the entity for which the "hat" is being worn is likewise responsible for the employee's actions.[2] In this case,

---

[2] In many cases, the wearing of multiple "hats" can also lead to alter-ego or other veil-piercing issues. However, those issues are not before the Court, as discussed at length earlier in the Texas.

whatever other hats he may wear, Mr. Foreman is indisputably wearing the "General Manager of Corporate HSE" hat for "Trinidad Drilling Ltd.," and he wears that hat in Houston, Texas.

Second, the statement is irrelevant, since this issue does not turn on whether Mr. Foreman is an "employee," under any definition of that term. A corporation does not act only through "employees." Instead, a corporation acts through all of its *"people"*—whether officers, directors, employees, or agents. *See Internat'l Shoe v. Washington*, 326 U.S. 310, 316 (1945). In this case, whether or not Mr. Foreman is an "employee" under some meanings of that term, undisputed evidence shows that he quite probably is an "officer" of Trinidad Limited for jurisdictional purposes, and he most definitely is acting as its "agent." Indeed, Trinidad Limited does not even attempt to dispute this fact.

Aside from Mr. Foreman's presence in Texas (which is sufficient in itself), Plaintiffs also demonstrated that Trinidad Limited has a director residing in Texas, and that its "banker" has been "Wells Fargo, N.A." in "Houston, Texas." Appellants' Brief at 32 (citing, e.g., Supp. C.R. 237; C.R. 267; C.R. 300; C.R.329; C.R. 348. These points are adequately addressed in the opening brief and need no elaboration.

In summary, the undisputed evidence demonstrates that Trinidad Limited maintains a continuous physical presence in Texas, through its high-level agent,

and that its agent's activities are central to its business. Therefore, this physical presence—standing alone—demonstrates that Trinidad Limited has "continuous and systematic contacts" sufficient to make it "at home" in this forum. Moreover, if the physical presence of its high-level agent were not independently sufficient to establish general jurisdiction, such jurisdiction is also supported by the great weight of evidence. Therefore, whether or not the Court concludes Trinidad Limited is subject to specific jurisdiction, the trial court's decision should be overruled on the basis of general jurisdiction.

## VI. Prayer

For the reasons stated above, Plaintiffs respectfully pray that this Court reverse the trial court, render a decision denying Trinidad Limited's special appearance, and remand this action for proceeding on the merits.

Respectfully submitted,

By   */s/ Geoffrey E. Schorr*
     Geoffrey E. Schorr
     geoff@schorrfirm.com
     Texas Bar No. 24029828
     A. Jared Aldinger
     Texas Bar No. 24068456
     jared@schorrfirm.com
     SCHORR LAW FIRM, PC
     328 W. Interstate 30, Suite 2
     Garland, TX 75043
     Tel. (972) 226-8860
     Fax (972) 226-9787

Hutton W. Sentell
Texas Bar No. 24026655
hsentell@ashmorelaw.com
ASHMORE LAW FIRM, P.C.
3636 Maple Ave.
Dallas, TX 75219
Tel. (214) 559-7202
Fax (214) 520-1550

Andrew P. McCormick
Texas Bar No. 3457100
amccormick@mlm-lawfirm.com
McCORMICK, LANZA & McNEEL, LLP
4950 Bissonnet Street
Bellaire, TX 77401
Tel. (713) 523-0400
Fax (713) 523-0408
ATTORNEYS FOR
PLAINTIFFS/APPELLANTS ADELAIDA
SALAZAR BAUTISTA a/k/a  ADELAIDA
ALVARADO, Individually, and as next
friend of MARIA JENNIFER AIDE a/k/a
MARIA JENNIFER ALVARADO, A. A.,
A. A., I. S. A., M. A., and E. A., Minors

and

By: */s/ Justin K. Hall*
Justin K. Hall
Texas Bar No. 90001828
jkhall@justinkhall.com
328 W Interstate 30, Suite 2
Garland, Texas  75043
Tel. (972) 226-1999
Fax  (972) 226-2221
Attorney for Plaintiffs, Irineo Alvarado and
Maria Ana Moctezuma

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(B) because it contains 4,445 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).  In making this certification, I am relying on a word count performed by the Microsoft Word software used to prepare this brief.

By  */s/ Geoffrey E. Schorr*

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2015, a true and correct copy of this Appellants' Brief was served on counsel for Appellee via: the Texas e-file system which will send a notice of this electronic filing to Michael Beckelman and Sean Higgins, at their email addresses on file with the electronic filing manager.

By  */s/ Geoffrey E. Schorr*